PEOPLE v. BELL

OPINION OF THE COURT

1. CRIMINAL LAW—INSTRUCTIONS—PRIOR ARGUMENTS.
    Where defendant charged with murder pleads self-defense, and
    asserts that the killing was accidental, instruction to jury
    which conditioned its consideration of prior arguments and
    altercations between defendant and deceased on defendant's
    sense of immediate fear for his life *held*, not prejudicial in
    light of the nature of previous encounters between defendant
    and deceased who weighed 100 pounds less and the fact that
    deceased's previous threats with a knife were harmless and
    engendered no reasonable apprehension of danger which would
    influence the conflict in question.

2. SAME—INSTRUCTIONS—DUTY TO RETREAT.
    Failure of trial judge to instruct in second-degree murder case
    that defendant was not under duty to retreat in his own
    home before he could resort to self-defense *held*, proper where
    duty to retreat was not placed in issue, no such instruction was
    requested and instructions made no intimation with respect to
    the existence of such a duty.

DISSENTING OPINION
LEVIN, P. J.

3. CRIMINAL LAW — SELF-DEFENSE — PRIOR ARGUMENTS — QUESTION
    FOR TRIER OF FACT.
    *Question whether previous arguments and altercations exchanged
    between defendant and deceased were harmless or reasonably*

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 4, 5]  40 Am Jur 2d, Homicide §§ 519, 520.
    53 Am Jur, Trial § 650.
[3]  40 Am Jur 2d, Homicide § 480.
[6]  21 Am Jur 2d, Criminal Law §§ 45, 142.
[7]  40 Am Jur 2d, Homicide § 480.
[8]  40 Am Jur 2d, Homicide §§ 519, 520.
[9]  39 Am Jur, New Trial §§ 117, 120.

*engendered apprehension of danger which justifiably influenced
the defendant's conduct during confrontation which led to
death of deceased was question for jury on proper instruc-
tions.*

4. SAME—INSTRUCTIONS—REVIEW.
    *Court of Appeals should not approve improper instruction of
    the jury on the issue of self-defense based on its appraisal
    of the conflicting evidence as to whether prior altercations
    were harmless or reasonably engendered apprehension of dan-
    ger.*

5. SAME—DEFENSES—SELF-DEFENSE—ACCIDENT.
    *Defendant is not barred from asserting defense that fatal wound-
    ing of deceased was in self-defense and having jury instructed
    on that defense by his assertion in testimony that the wounding
    was unintentional, since such claims are not inconsistent.*

6. SAME—DEFENSES—INCONSISTENCY.
    *Inconsistent defenses may be asserted in a criminal case.*

7. SAME—SELF-DEFENSE—PRIOR ALTERCATIONS—RELEVANCE.
    *Prior altercations between defendant and deceased were relevant
    to determination by jury of whether or not defendant's ac-
    tions under the circumstances were justified, even if it found
    fatal stabbing had been intentional.*

8. SAME—SELF-DEFENSE—PRIOR ALTERCATIONS—INSTRUCTIONS.
    *Defendant charged with murder, who pleads self-defense and
    asserts that the killing was accidental, was entitled to instruc-
    tion that jury in judging the reasonableness of defendant's
    reaction to deceased's assault should consider any past threats
    or altercations between defendant and deceased.*

9. SAME—INSTRUCTIONS—ESSENTIAL ISSUE—NEW TRIAL.
    *Defendant is entitled to new trial where trial judge's instructions
    on essential issue of self-defense in murder case were mislead-
    ing and erroneous.*

Appeal from Recorder's Court of Detroit, Daven-
port (Elvin L.), J. Submitted Division 1 May 8,
1968, at Detroit. (Docket No. 3,872.) Decided Oc-
tober 24, 1968. On consideration of application for
leave to appeal, remanded to Court of Appeals for
further consideration on May 7, 1969. 382 Mich 751.

Robert Bell was convicted of second-degree murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Samuel J. Torina,* Chief Appellate Lawyer, and *Angelo Pentolino,* Assistant Prosecuting Attorney, for the people.

*William L. Price,* for defendant on appeal.

Burns, J. Defendant was convicted by a jury of murder in the second degree. CL 1948, § 750.317 (Stat Ann 1954 Rev § 28.549). He appeals claiming the trial court erred in its instructions.

Two witnesses for the prosecution testified that they saw the deceased, Lendora Clark, backed against some kitchen cabinets and the defendant standing with a knife in front of the deceased who had no weapon. One of these witnesses had also seen the defendant twice lunge toward the deceased with the knife. The defendant testified on his own behalf and cited prior occasions when the deceased had threatened the defendant with a knife in the course of arguments. Defendant claimed that on the day of the killing, June 17, 1964, another dispute arose, and the deceased attacked the defendant with a knife. Defendant allegedly fought in self-defense and during the fight Lendora Clark was accidentally stabbed.

Defendant claims on appeal that the following jury instruction erroneously took from the jury the consideration of the effect of prior altercations on defendant's state of mind as he was allegedly being attacked by the deceased:

"I charge you that ill-will of the deceased and former quarrels and affrays could have nothing

whatever to do with defendant, Robert Bell, how-
ever hostile the deceased may have been, and the
many quarrels and affrays the parties may have
had, if the deceased, by his act, did not threaten
peril to the defendant on that day. Now, the rea-
son for that is, many people are quarrelsome—
many people are quarrelsome, but are they assault-
ive and the test is, what happened that day? The
test is, was he in danger of losing his life, that
day? Was he justified in the slaying because of
what he believed, at that moment, was about to
happen? Because a defendant is not authorized, by
law, to infer peril on account of ill-will, or prior
contests. People act differently on different occa-
sions. Sometimes they are angry and quarrelsome,
and sometimes just like lambs, and that's the rea-
son."

The two cases cited by the defendant, *Hurd* v.
*People* (1872), 25 Mich 405, and *People* v. *Tillman*
(1902), 132 Mich 23, sustain defendant's position
that prior arguments can be considered in deter-
mining the state of mind of the accused. However,
in those cases self-defense was an excuse or justifi-
cation for the criminal act upon which the prosecu-
tion was based. In the present case defendant's own
testimony and claim was that the act of killing must
have been accidental. The defendant testified as
follows:

[Direct examination] "He jumped up from the
table with a knife in his hand, and I grabbed a chair,
and Mr. Clark struck at me with the knife, and we
struggled, and he went around me, and I put my
right hand across his, and held his right hand, and
we were locked up. I don't know what happened
between the cutting, and something I know, Mr.
Clark was cut like that, and I am very sorry it hap-
pened  *   *   *  ."

[Cross-examination] "I grabbed it [the knife] with my left arm, and that's when I got cut here (indicating), so I put my hand up like this (demonstrating), and pushed him, and me and him was tussling there, and I don't know what happened there in the tussle. I don't know what happened. I knew he was cut."

The role of self-defense in this case was to show that the defendant was not the aggressor and to supply a justification or excuse for engaging in a struggle which resulted in accidental death. Defendant's testimony and that of his own brother demonstrate that the deceased's previous threats with a knife were harmless and engendered no reasonable apprehension of danger which would influence the conflict in question. In prior arguments the deceased never touched the defendant with a knife. On several occasions it appears that the deceased pulled out his knife to protect himself from the defendant who had an approximate 100 pound weight advantage.

Cross-examination of defendant:

"*Q*. Now, you say that Mr. Clark threatened you with a knife many times, is that right?

"*A*. That's right.

"*Q*. Ever cut you with a knife?

"*A*. No.

"*Q*. Not one time?

"*A*. Ain't never cut me.

"*Q*. Did the deceased ever pull a knife out to protect himself from you?

"*A*. He pulled that knife every time me and him had an argument. That's how I know he had it.

"*Q*. And he threatened you with it, is that right?

"*A*. If I tried to do something to him, he would do something to me.

"*Q*. He told you, if you do something to me, what he was going to do with you?

"*A*. That is right."

Cross-examination of defendant's brother:

"*Q.* And you testified that the deceased did not point the knife at your brother, is that right?

"*A.* No, I didn't see him point it.

"*Q.* And you testified that he never threatened your brother with a knife, is that right?

"*A.* No.

"*Q.* No, what?

"*A.* He didn't threaten—I didn't see him threaten him with a knife.

"*Q.* You saw him with it, is that right?

"*A.* Yes, sir.

"*Q.* And you also testified that he had the knife for protection, isn't that what you said, to defend himself against your brother?

"*A.* Yes, sir, he had it to defend himself. I imagine everybody would grab a knife to defend themselves.

"*Q.* Did you ever see an actual fight between your brother and the deceased, Lendora Clark?

"*A.* No.

"*Q.* Never saw them fight?

"*A.* No."

The court's instructions, *supra,* conditioned jury consideration of prior hostility on defendant's sense of immediate fear for his life. This was not prejudicial error in light of the testimony regarding the nature and extent of the defendant's encounters with the deceased and regarding the claimed accidental cause of death. Reading the charge as a whole, it fairly sets forth the applicable law and the claims of the People and the defense.

Defendant also alleges the court erred by failing to instruct the jury that since the affray occurred in defendant's own residence (it was also the residence of the deceased) he was under no duty to retreat before he could resort to self-defense. This

instruction was never requested. Furthermore, the element of retreat was never an issue during the course of the trial, and the trial court's instructions did not intimate the erroneous proposition* that defendant was under a duty to retreat. Therefore, the desired charge was not legally necessary and its absence did not render the instructions erroneous or misleading. See CL 1948, § 768.29 (Stat Ann 1954 Rev § 28.1052), and *People* v. *Guillett* (1955), 342 Mich 1.

Affirmed.

DALTON, J., concurred with R. B. BURNS, J.

LEVIN, P. J. (*dissenting*). The majority acknowledges the principle that where one accused of a crime of violence defends claiming self-defense "prior arguments [between the victim and the accused] can be considered [by the jury] in determining the state of mind of the accused." But, says the majority, even though the defendant in this case interposed that defense and there was evidence of such past altercations and the judge purported to charge thereon, the defendant may not avail himself of that principle because (1) by his own testimony "the killing must have been accidental" and, besides, (2) the testimony showed that the "deceased's previous threats with a knife were harmless and engendered no reasonable apprehension of danger which would influence the conflict in question. In prior arguments the deceased never touched the defendant with a knife. On several occasions it appears that the deceased pulled out his knife to protect himself from the defendant who "had an approximate 100 pound weight advantage."

---

* *People* v. *McGrandy* (1967), 9 Mich App 187.

The majority's explanation for its decision is tantamount to a ruling that there was no need correctly to charge the jury on self-defense because on the evidence the defendant was not entitled to any charge at all on that issue. I respectfully dissent.

Even a man with a 100-pound weight advantage might become apprehensive when he is assaulted with a knife. He is not required as a matter of law to dismiss from his mind prior altercations during which his assailant also pulled a knife just because he had not previously been "touched" by the knife. Whether the "previous threats with a knife" were harmless or reasonably engendered apprehension of danger which justifiably influenced the defendant's conduct during the fatal altercation was for the jury to decide on proper instructions. This Court should not approve an improper instruction of the jury on the issue of self-defense based on its appraisal of the conflicting evidence on that disputed factual issue.

The defendant Bell was not barred from asserting self-defense because he claimed that the "act of killing must have been accidental." The defendant testified that the deceased assaulted him with a knife and that during the struggle the deceased suffered a fatal stab wound, that the stab wound was inflicted unintentionally or accidentally.[1]

It was the defendant's duty to use the least force necessary to protect himself during the altercation. He was not obliged to abandon his claim that the fatal wound was inflicted unintentionally, it was not necessary for him to concede it was inflicted intentionally in order to assert self-defense.

---

[1] The defendant's counsel characterized the deceased's death as "accidental," but he also asserted that the defendant acted in self-defense. Both defense theories, self-defense and accidental death, were covered in the judge's charge to the jury.

There is no inconsistency between the claim of self-defense, *i.e.,* that the defendant acted justifiably to protect himself, and the claim that the fatal wound was inflicted unintentionally or accidentally in the struggle. And, even if there were, it should not prevent interposition of the defense. Inconsistent defenses may be asserted in a criminal case just as in a civil one.[2]

Furthermore, the jury had the right to acquit the defendant even if it disbelieved his assertion that the fatal stab wound was inflicted unintentionally or accidentally, even if it found that he intended to inflict the fatal wound, as long as it concluded that the defendant's actions under the circumstances were justified. On that question, the critical question of whether his actions were justified, the past altercations were relevant.

The testimony showed numerous prior threats and altercations involving the deceased and the defendant. There was testimony that a knife had been taken from the deceased by a third party during a prior dispute, and that the deceased on more than one occasion had a knife in his hand. The defendant testified the deceased had "pulled" a knife on 9 prior occasions during arguments between them.

The judge charged at length on self-defense. The portion of the charge to which the defendant excepts reads as follows:

"I charge you that ill-will of the deceased and former quarrels and affrays could have nothing whatever to do with respondent, Robert Bell, however hostile the deceased may have been, and the many quarrels and affrays the parties may have had, if the deceased, by his acts, did not threaten peril to

---

[2] See *People v. Keys* (1968), 9 Mich App 482, 497, footnote 6, per Levin, J., dissenting.

the respondent on that day. Now, the reason for that is, many people are quarrelsome,—many people are quarrelsome, but are they assaultive, and the test is, what happened that day? The test is, was he in danger of losing his life, that day? Was he justified in the slaying because of what he believed, at that moment, was about to happen? Because a defendant is not authorized, by law, to infer peril on account of ill-will, or prior contests. People act differently on different occasions. Sometimes they are angry and quarrelsome, and sometimes just like lambs, and that's the reason."

On the same principle that evidence of past threats and disputes is admissible on the issue whether the accused's reaction to the deceased's alleged assault was justified,[3] the defendant in this case was entitled to a charge just the converse of the one that was given. The defendant was entitled to have the jury instructed that in judging the reasonableness of his reaction at the time of the assault the jury should consider any past threats and altercations it finds to have been made or to have occurred.

No purpose would be served in permitting evidence of prior threats and altercations to be received in evidence, as was done in this case, and excluding such evidence from the jury's consideration.

In *People* v. *Tillman* (1902), 132 Mich 23, the Michigan Supreme Court held it was error to in-

[3] *Brownell* v. *The People* (1878), 38 Mich 732, 735, 736 (Evidence that the deceased was a "powerful man of dangerous temper, who had made threats against" the defendant should have been admitted; the Court observed: "We think it was also proper to seek to show the previous threats and conduct of [the deceased] as having some tendency to explain the character of his assault on Brownell.") See, also, *Hurd* v. *The People* (1872), 25 Mich 405, 417, 418; *People* v. *Walters* (1923), 223 Mich 676, 680, quoted approvingly in *People* v. *Giacalone* (1928), 242 Mich 16, 21; *People* v. *Ake* (1961), 362 Mich 134, 136; *People* v. *Stallworth* (1961), 364 Mich 528, 535–537; 1 Gillespie, Michigan Criminal Law and Procedure, (2d ed), § 418, p 501.

struct a jury that an altercation between the defend-
ant and the complaining witness on the day preced-
ing the assault could not be considered by the jury
except as it bore on the credibility of witnesses, de-
claring (p 24) :

"Previous assaults, the conduct and threats of the
complaining witness, were competent for the jury
to consider in determining the state of mind of the
defendant and the character of his acts.  The re-
spondent was justified in acting in view of the sur-
rounding circumstances as they appeared to him at
the time."

The trial judge's charge was erroneous and mis-
leading on an essential issue in the case[4] and a new
trial should be ordered.

---

[4] See *People* v. *Liggett* (1967), 378 Mich 706, 714; *People* v.
*Guillett* (1955), 342 Mich 1, 7.  See, also, *People* v. *Keys, supra,* pp
498–501.