PEOPLE v HARRIS

Docket No. 107993. Argued May 5, 1998 (Calendar No. 4). Decided
    July 28, 1998.

Jerry D. Harris, Sr., was charged with open murder, and offered
    defenses of intoxication, self-defense, and accident. Defense
    attempts during trial to introduce evidence of the victim's reputa-
    tion for violence and a motion for a directed verdict with respect to
    a first-degree murder charge on the ground that evidence of pre-
    meditation was lacking were denied by the trial court. The defend-
    ant was convicted by a jury in the Calhoun Circuit Court, Stephen
    B. Miller, J., of voluntary manslaughter. The Court of Appeals,
    MacKenzie, P.J., and Markey and J. M. Batzer, JJ., affirmed in an
    unpublished opinion per curiam (Docket No. 161477). The defend-
    ant appeals.

    In an opinion by Justice Cavanagh, joined by Chief Justice
Mallett, and Justices Brickley and Kelly, the Supreme Court held:

    There was sufficient evidence to send the first-degree murder
charge to the jury; however, the trial court erred in excluding cer-
tain character evidence of the victim.

    1. A defendant may show a pertinent trait of character for an
alleged victim that bears on whether the victim committed an act
of aggression on a particular occasion in conformity with that trait.
The inquiry is one of objective occurrence, not of subjective belief.
In contrast, where a defendant charged with murder asserts self-
defense, the defendant's state of mind at the time of the act is
material in determining justification for a belief in an impending
attack by the deceased. A deceased's violent reputation is a circum-
stance that would cause such a belief. Unlike evidence tending to
show that the victim was the aggressor, the deceased's violent rep-
utation must be known to the defendant to be used to show that
the defendant acted in self-defense.

    2. Character evidence is admissible where character or trait of
character is an element of a claim, charge, or defense, or as cir-
cumstantial evidence of an act. As a general rule, the character of
the victim may not be shown by specific instances of conduct
unless those instances are independently admissible to show some
matter apart from character as circumstantial evidence of the con-

duct of the victim on a particular occasion. In this case, the trial
court improperly excluded character evidence of the victim's repu-
tation for violence and turbulence. Because the evidence would
have tended to corroborate the defendant's theories of self-defense
and that the victim was the aggressor, the error requires reversal.

Reversed and remanded.

Justice TAYLOR, joined by Justices BOYLE and WEAVER, dissenting,
stated that the defendant's conviction should be affirmed because
any error was harmless.

In the context of the evidence admitted regarding the victim's
violent reputation and the circumstances surrounding his death, as
well as the defendant's own theory that the death was accidental,
the erroneous exclusion of certain reputation evidence regarding
the victim's violent character was harmless. It is highly probable
that the exclusion of the evidence did not contribute to the verdict.
Nor would the error justify reversal of defendant's conviction under
MCL 769.26; MSA 28.1096 or MCR 2.613(A), i.e., because the error
resulted in a miscarriage of justice.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *Susan L. Mladenoff*, Prosecuting Attorney, and *David J. Wallace*, Assistant Prosecutor, for the people.

State Appellate Defender (by *Ronald E. Steinberg*) for the defendant.

Amicus Curiae:

*Norman W. Donker*, President, *John D. O'Hair*, Prosecuting Attorney, and *Timothy A. Baughman*, Chief, Research, Training and Appeals, for the Prosecuting Attorneys Association of Michigan.

CAVANAGH, J. In this case we granted leave to determine whether the trial court erred in excluding certain character evidence of the victim. We hold that the trial court erred.

I. FACTS

On May 28, 1992, Jerry Harris stabbed to death his long-time friend Wildean Holbrook. Harris claimed the stabbing was accidental, and he relied on three defense theories: intoxication, self-defense, and accident. He claimed that he, the victim, and two other witnesses had been drinking heavily at the time of the incident and that an altercation broke out between the defendant and Wildean Holbrook. The defendant asserted that he took out a knife as a possible means of defending himself, but that he did not intend to stab Holbrook. Rather, during the altercation, the defendant and Holbrook collided, and in so doing, Holbrook was unintentionally stabbed by the knife defendant was holding. The defendant was charged in Calhoun Circuit Court with open murder, MCL 750.316; MSA 28.548, and he was convicted by a jury of voluntary manslaughter, MCL 750.321; MSA 28.553.

During trial, the defendant sought to cross-examine the victim's brother, an eyewitness, about the victim's reputation for violence and possibly specific instances of conduct relating to his violence. The trial court noted that it was "not sure exactly" whether the defendant sought to introduce reputation evidence only, or reputation evidence and specific acts of violence. It ruled on the motion without making a distinction between specific acts and reputation evidence because it found that the evidence would be inadmissible on hearsay grounds. Later, when the defendant sought to call the victim's wife to testify about the victim's violent character, the court stated, "The Defendant did not testify as to knowing about a reputation for violence of the deceased, so it doesn't matter what other people thought or heard or knew

or felt as far as the deceased's reputation." The court did recognize, however, that "the Defendant testified that he was afraid of Wildean and he said because he had been around Wildean when he was violent with [defendant] before and he was drinking."

At the close of the proofs, defense counsel moved for a directed verdict in regard to the first-degree murder charge. Defense counsel argued that there was no evidence presented that the stabbing was premeditated. The trial court denied the motion, stating that because the testimony indicated that the defendant had taken his knife out of his pocket before the stabbing, a jury may find that Mr. Harris had an opportunity to think about what he was doing, and perhaps prepare for it before carrying out his intentions. The defendant was subsequently convicted of voluntary manslaughter, and he was sentenced to fifteen years of imprisonment for the conviction.

Defendant appealed in the Court of Appeals, which affirmed in an unpublished per curiam opinion. Defendant appealed, and this Court granted leave.

II

A. FIRST-DEGREE MURDER CHARGE

The defendant challenges the sufficiency of evidence to convict him of first-degree premeditated murder; however, we find that there was sufficient evidence to have sent the charge to the jury. We agree with the trial court that viewing the evidence in the light most favorable to the prosecution shows that the defendant was arguing with the deceased,

that he had taken a knife out prior to the stabbing, there was a time, as you recall from the evidence, at least from

the Prosecutor's point of view, where the deceased started to walk away, and turned and came back towards the Defendant, the Defendant and the deceased then came towards each other, and that by inference, no direct testimony but rather strong circumstantial evidence, the Defendant then plunged a knife into the chest or heart of the deceased.

And even that testimony I think would provide enough time for the Defendant to have reflected and thought about what he was going to do and that he went ahead and did it, decided that he was going to stab the deceased in the heart or chest, and did so.

So, it doesn't take a whole lot of time, and certainly you can argue that the circumstances weren't the kind that are crystal clear, certainly you can argue both ways on this particular point, but certainly if the jury decides to return a verdict of first-degree murder, I don't think that would be unsupported by the evidence, at least from the prosecutor's point of view . . . .

Therefore, we find that it was not an error for the trial judge to submit the first-degree murder charge to the jury because the evidence could support a conviction on that charge.

### B. EVIDENTIARY ERROR

The defendant claims that the trial court erred in excluding certain character evidence pertaining to the victim. First, the defendant claims that the trial court erred in refusing to admit evidence of past violent acts of the deceased that were not known to the defendant as bearing on whether the victim was the aggressor. Second, the defendant asserts that the trial court erred in excluding testimony about the victim's past violent tendencies that defendant had been told about, but did not witness, as bearing on defendant's state of mind relating to his self-defense theory.

Because the trial court was "not sure exactly" whether the evidence sought to be admitted related to reputation evidence only or whether it also included specific acts of violence on the part of the victim, we will address both methods of introduction of evidence.

### 1. CHARACTER EVIDENCE

MRE 404 provides:

> Character evidence not admissible to prove conduct; exceptions; other crimes.
>
> (a) *Character evidence generally.* Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:
>
>    *  *  *
>
> (2) *Character of victim of a crime other than a sexual conduct crime.* Evidence of a pertinent trait of character of the victim of the crime, other than in a prosecution for criminal sexual conduct, offered by an accused, or by the prosecution to rebut the same . . . .

The actual violent character of the deceased, even though it is unknown to the defendant, is admissible as evidencing the deceased's probable aggression toward the defendant. 2 Wigmore, Evidence (Chadbourn rev), § 246, p 60. It is now widely accepted that a defendant may show a pertinent trait of character of the alleged victim that bears on whether the victim committed an act of aggression on the particular occasion in conformity with that trait. 1A Wigmore, Evidence (Tillers rev), § 63, p 1350. This is so because, when a controversy arises regarding whether the deceased was the aggressor, a jury's persuasion may be affected by the character of the

deceased because it will shed light on the probabilities of the deceased's action. *Id.* The sole purpose for which evidence of this type is admissible is, from the victim's general turbulent or violent character, to render more probable the evidence that tends to show an act of violence at the time he was killed.

> "[T]his probability is evidently not affected in the slightest degree by [the defendant's] previous knowledge. The light comes from the fact that the [victim] was one who was apt or likely to do such an act as the one imputed to him, and not from [the defendant's] knowledge of the fact." [*Id.* at 1367.]

Because the question is what the victim probably did, not what the defendant probably thought the victim was doing, the additional element of communication to the defendant is unnecessary when using character evidence to prove the victim was the aggressor. "The inquiry is one of objective occurrence, not of subjective belief." *Id.* at 1369. See *People v Stallworth*, 364 Mich 528, 536-537; 111 NW2d 742 (1961).

In contrast, where a defendant charged with murder asserts that he killed in self-defense, his state of mind at the time of the act is material because it is an important element in determining his justification for his belief in an impending attack by the deceased. 2 Wigmore, Evidence (Chadbourn rev), § 246, p 50. The reputation of the deceased for a violent or turbulent disposition is a circumstance that would cause such a belief. However, unlike evidence tending to show that the victim was the aggressor, the deceased's violent reputation must be known to the defendant if he is to use it to show that he acted in self-defense. "Reputation in the neighborhood where both live is sufficient with nothing more." *Id.* at 58. The strength of the

deceased as well as his habitual carrying of weapons or his possession of them at the time of the affray, if known to the defendant, should be considered as properly affecting his apprehensions. *Id.* at 59. The purpose of this evidence is to show the defendant's state of mind; therefore, it is obvious that the victim's character, as affecting the defendant's apprehensions, must have become known to him, otherwise it is irrelevant. See *People v Walters*, 223 Mich 676; 194 NW 538 (1923).

### 2. CHARACTER "IN ISSUE" VERSUS CIRCUMSTANTIAL USE OF CHARACTER

However, stating that an accused may present evidence of the deceased's character or reputation for violence is insufficient by itself. Character evidence should be separated into two categories, depending on the purpose for which the evidence is to be used: (1) character used as an ultimate issue in the case, and (2) character used as circumstantial evidence of an act.

> Substantive law sometimes makes the rights and liabilities of parties depend in part on the existence or nonexistence of a trait of character. . . . In these cases, character evidence is of course admissible since what is at issue in the case *is* a character trait, and if the issue is to be resolved on the basis of evidence, evidence of character must be admitted. This principle finds expression in the modern rule that evidence of character is admissible when character or trait of character is an essential element of a claim, charge, or defense. [1A Wigmore, Evidence (Tillers rev), § 69.1, p 1457 (emphasis in original).]

> [On the other hand,] [w]hen character evidence is used circumstantially, the existence of a particular disposition is not itself the matter in issue; rather, evidence of a person's disposition is offered to show the doing or not-doing of an

act on a particular occasion. . . . [T]he accused may ordi-
narily offer evidence of a pertinent trait of character of the
victim, . . . but such use of evidence also constitutes cir-
cumstantial use of character. [*Id.* at 1478.]

Where character is "in issue," the character of a
person may be an element of the crime, claim, or
defense. Illustrations include: the competency of the
driver in an action for negligently entrusting a motor
vehicle to an incompetent driver, or the truthfulness
of a person in an action for defamation of the per-
son's allegedly "untruthful" character.

> Nevertheless, . . . courts often fail to follow the logic of
> the distinction just described—though repeatedly chastised
> by scholars of evidence for failing to do so—and not infre-
> quently courts have said . . . that character is "in issue"
> when such is not the case according to the logic described
> above. . . . The same sort of jumbling of categories of
> character in issue and character as circumstantial evidence
> is sometimes also apparent in [cases] involving the proof of
> the character of the victim of a crime . . . . [1A Wigmore,
> Evidence (Tillers rev), § 63.1, p 1383, n 1.]

### 3. SPECIFIC ACTS VERSUS REPUTATION

Having noted the difference between circumstantial
use of character and character "in issue," we must
next determine the significance of the distinction.
MRE 405 provides:

> Methods of Proving Character
>
> (a) *Reputation or opinion.* In all cases in which evidence
> of character or a trait of character of a person is admissi-
> ble, proof may be made by testimony as to reputation or by
> testimony in the form of an opinion. On cross-examination,
> inquiry is allowable into reports of relevant specific
> instances of conduct.

(b) *Specific instances of conduct.* In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of that person's conduct.

As a general rule, the character of the victim may not be shown by specific instances of conduct unless those instances are independently admissible to show some matter apart from character as circumstantial evidence of the conduct of the victim on a particular occasion.

> [W]hen character is not an essential element, it may be shown only by reputation or opinion evidence. . . . Hence, construed literally, Rule 405 does not permit a defendant to use specific instances to show that the victim was the aggressor since the aggressive character of the victim is not an essential element of the defense of self-defense since the aggressive character of the victim is introduced as circumstantial evidence to show that the victim committed the first or primary *act* of aggression against the defendant, which is to say that the defense of self-defense in this situation makes an act of the victim, rather than a trait of the victim's character, the material issue. [1A Wigmore, Evidence (Tillers rev), § 63.1, p 1382-1383, n 1.]

On the other hand, rule 405 allows specific instances of violence to be admitted only when character or a trait of character is made an essential element of a claim, charge, or defense. *Id.* See *People v Farrell*, 137 Mich 127; 100 NW 264 (1904); *People v Cooper*, 73 Mich App 660; 252 NW2d 564 (1977) (indicating that specific acts may not be shown to establish that the victim was the aggressor; specific acts, however, may be shown to establish reasonable apprehension of harm).

### C. APPLICATION OF EVIDENTIARY ERROR

As can be seen by this language, the trial court erred in ruling on the admissibility of the character evidence pertaining to the victim when it was "not sure exactly" whether the evidence sought to be admitted pertained to reputation only or whether it also included evidence of specific acts committed by the decedent. To the extent that the evidence sought to be admitted pertained to the decedent's reputation only, it was error for the trial judge to exclude it. However, if the defendant also sought to admit evidence of specific acts of violence or turbulence committed by the decedent, it was not error for the trial judge to exclude it.

We find that the evidentiary error committed by the trial court was not harmless. We recently adopted the "highly probable" standard for determining nonconstitutional harmless error in *People v Gearns*, 457 Mich 170; 577 NW2d 422 (1998). Under that standard, " '[u]nless the appellate court believes it highly probable that the error did not affect the judgment, it should reverse.' " *People v Mateo*, 453 Mich 203, 219; 551 NW2d 891 (1996), quoting Traynor, The Riddle of Harmless Error (Ohio State Univ Press, 1970), pp 34-35. We cannot say that there is a high probability that the inclusion of evidence pertaining to the deceased's violent character would not have affected the judgment. As the Court of Appeals correctly noted, the defense rested on three theories: intoxication, self-defense, and accident. Although the theories of self-defense and accident may seem inconsistent, according to the defendant, he drew his knife in self-defense, but the actual stabbing occurred by accident when the two men collided. Because an important

theory of defendant's case was self-defense, character evidence tending to show the victim's violent character should have been admitted to show (1) that the victim was the likely aggressor, and (2) the defendant acted out of self-defense.[1] Therefore, we remand *Harris* for a new trial on the basis of evidentiary error committed in the first trial.

MALLETT, C.J., and BRICKLEY and KELLY, JJ., concurred with CAVANAGH, J.

TAYLOR, J. I dissent from the majority's conclusion that the erroneous exclusion of certain reputation evi-

---

[1] The dissent argues that the evidentiary error committed by the trial court was harmless because the defendant was allowed to testify that the two men had been "drinking and arguing" on the day in question. *Post* at 323. We respectfully disagree. First, testimony regarding two friends who were "arguing and drinking" while discussing wood is not the same as admitting evidence from the victim's wife and other friends who would testify that the victim had a reputation for violence, especially while drinking. The trial court limited the defendant's testimony to what he personally witnessed, and refused to allow the defendant to call witnesses who would support his theory that the victim had a violent character because he slapped, shoved, threatened with a gun, and chased with a truck other persons. While specific acts of violence are not admissible to show a character trait of the victim, this reputation evidence, especially coming from the victim's wife, would tend to show that the defendant's fear of the victim was a reality. Furthermore, despite the argument of the dissent that this evidence would merely corroborate "overwhelming evidence of the victim's aggressive behavior *on the day at issue*," *id.* at 324 (emphasis added), even the trial judge acknowledged that the defendant's "testimony . . . in that regard was fairly brief . . . ." Additionally, evidence that the victim was arguing over wood *on the day in question* is not the same as reputation evidence that the victim was generally both violent and turbulent. The testimony of others regarding the victim's reputation for violence is particularly important in light of the fact that Detective Jack Schoder retrieved a pocket knife from the victim, and the defendant testified that he saw the victim reaching toward his pocket and was "[c]oming out of his pocket with a knife."

Finally, we find unpersuasive the dissent's reliance on a 1968 Michigan Court of Appeals case that was decided before *Gearns* as conclusive support that the error in this case was harmless.

dence regarding the victim's character for violence
was not harmless.

This matter arises out of the death of defendant's
friend from a knife wound. Defendant raised three
defenses: accident, self-defense, and intoxication. I
agree with the majority's conclusion that the trial
court did not err in denying defendant's motion for
directed verdict on the first-degree murder charge
because there was sufficient evidence to support this
charge. I also agree with the majority's analysis of the
evidentiary issues and its conclusion that the trial
court erred in excluding reputation evidence regard-
ing the victim's violent character. However, I disagree
with the majority's conclusion that there was not "a
high probability that the inclusion of evidence per-
taining to the deceased's violent character would not
have affected the judgment." *Ante* at 320. In the con-
text of the evidence admitted regarding the victim's
violent reputation and the circumstances surrounding
his death, as well as defendant's own theory that the
death was accidental, I am convinced that the errone-
ous exclusion of certain reputation evidence regard-
ing the victim's violent character was harmless. I do
not believe that this error would justify reversal of
defendant's conviction under either MCL 769.26; MSA
28.1096 ("No judgment or verdict shall be . . .
reversed . . . in any criminal case, on the ground of
. . . the improper . . . rejection of evidence . . .
unless in the opinion of the court, after an examina-
tion of the entire cause, it shall affirmatively appear
that the error complained of has resulted in a miscar-
riage of justice"), or MCR 2.613(A) ("An error in . . .
the exclusion of evidence . . . is not ground . . . for
setting aside a verdict . . . unless refusal to take this

action appears to the court inconsistent with substantial justice").

Despite the language of MCL 769.26; MSA 28.1096, in *People v Gearns*, 457 Mich 170; 577 NW2d 422 (1998), a majority of this Court adopted the "highly probable" standard for preserved, nonconstitutional error.[1] Under this standard, the issue is whether "it was highly probable that the errors did not contribute to the verdict[]." *Id.* at 205. Here, I am convinced that it is highly probable that the erroneous exclusion of certain reputation evidence regarding the victim's violent character did not contribute to the verdict.

First, some evidence of the victim's violent character was admitted. At trial, defendant testified about the victim's past history of having a violent temper when drunk. He also testified about the victim threatening to beat his wife on the day at issue.[2] Further, he testified about the specifics of the day at issue in terms of drinking, arguing between defendant and the victim, and physical altercations. The other two witnesses corroborated defendant's testimony regarding the drinking and arguing. In the context of this evidence bearing directly on the victim's conduct on the day at issue, additional evidence regarding the victim's general reputation for violence would have been largely cumulative. See, e.g., *People v Fortson*, 202

---

[1] I remain convinced that the proper standard for preserved, nonconstitutional error is set forth in MCL 769.26; MSA 28.1096 and that the defendant bears the burden of demonstrating why the judgment should be reversed. See *Gearns, supra,* opinion of WEAVER, J., concurring in part and dissenting in part, in which I concurred. However, I believe that the error at issue here is harmless even under the highly probable standard.

[2] Defendant also testified that he and the other two witnesses responded by reminding the victim that his wife had a restraining order against him, but the court instructed the jury to disregard that information.

Mich App 13, 19; 507 NW2d 763 (1993), in which the Court held that failure to admit character evidence in support of a defendant's self-defense theory was harmless beyond a reasonable doubt, given the overwhelming evidence of the victim's aggressive behavior on the day at issue. Where, as here, evidence of the victim's actual conduct in connection with the incident at issue is admitted, general character evidence becomes less compelling regarding whether the victim was the likely aggressor.

Moreover, while defendant claimed self-defense, his bottom-line theory was that the victim's injury and resulting death were accidental. Defendant's self-defense theory played a limited role similar to that described in *People v Bell*, 14 Mich App 80, 84; 165 NW2d 283 (1968):[3]

> The role of self-defense in this case was to show that the defendant was not the aggressor and to supply a justification or excuse for engaging in a struggle which resulted in accidental death.

Here, defendant contended that he was not afraid of the victim at the time he took out his knife; only later did he become afraid of the victim. Defendant testified that he was trying to get away when the victim was injured with the knife and that it was "an accident." Thus, according to defendant, the knife wound that killed the victim was accidental and not inflicted in self-defense. In the context of defendant's allegation that the fatal knife wound was accidental, evi-

---

[3] I refer to this case solely for its description of how a defendant might simultaneously claim accident and self-defense. I do not, as the majority erroneously contends, rely on it as "conclusive support that the error in this case was harmless." *Ante* at 321, n 1.

dence regarding the victim's character for violence was immaterial to whether defendant acted in self-defense. Accordingly, under defendant's own version of the incident, the exclusion of certain evidence relating to the victim's character for violence simply would not bear on whether defendant was guilty of the charged offenses.

For these reasons, I believe it is highly probable that this evidentiary error did not contribute to the verdict.[4] Accordingly, I would affirm defendant's conviction.

BOYLE and WEAVER, JJ., concurred with TAYLOR, J.

---

[4] I conclude that the error was harmless for three reasons: because some character evidence regarding the victim was admitted, because evidence regarding the specifics of the incident made general character evidence less compelling, and because defendant claimed that the fatal knife wound was accidental. The majority mischaracterizes my position by indicating that I find the error harmless solely because testimony regarding drinking and arguing was admitted.