*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
February 1, 2024

Plaintiff-Appellee,

v

No. 365018
Genesee Circuit Court
LC No. 22-049711-FC

MARQUON LEON JACKSON,

Defendant-Appellant.

Before: HOOD, P.J., and REDFORD and MALDONADO, JJ.

MALDONADO, J. (*concurring*)

I concur in the outcome, but I disagree with how the lead opinion reached it. In my opinion, defense counsel's question was inappropriate from its inception because defendant did not know anything about Khogaly's background. This case hinges entirely on defendant's state of mind, and information defendant did not know was wholly irrelevant to his state of mind. This case revolves around whether defendant believed he was in danger, the reasonableness of this belief, and whether his actions were a reasonable response to his perceived danger. This is a subjective inquiry, so the focus must be on the information that was available to defendant at that time. Because there is no indication that Khogaly committed an act of aggression, this case does not fall into the category of cases in which evidence of a character trait of aggression is admissible.

Finally, I also write separately to address what I view as a double standard regarding the adequacy of jury instructions as a curative measure. Simply put, if curative instructions are adequate to address circumstances unfair to defendants, they should also be viewed as adequate to address circumstances unfair to prosecutors.

*HARRIS* AND THE DISTINCTION BETWEEN A SUBJECTIVE CLAIM OF SELF-DEFENSE AND AN OBJECTIVE ACT OF AGGRESSION

The general rule is that "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion[.]" MRE 404(a). This rule, however, is subject to certain exceptions. Particularly relevant to this case is MRE 404(a)(2), which, in pertinent part, provides: "When self-defense is an issue in a charge of homicide, evidence of a trait of character for aggression of the alleged victim of the crime

-1-

offered by an accused" is admissible. A separate rule, MRE 405, deals with permissible ways to introduce evidence of a person's character in those circumstances in which character evidence is admissible. MRE 405(a) provides that "[i]n all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion." However, pursuant to MRE 405(b), evidence "of specific instances of [a] person's conduct" is only admissible when the "character or a trait of character of [that] person is an essential element of a charge, claim, or defense[.]"

In *People v Harris*, our Supreme Court provided an in-depth explanation regarding the interplay of those rules of evidence in homicide cases involving claims of self-defense. *Harris*, 458 Mich at 315-316. In particular, the Supreme Court analyzed whether the defendant must have known of the victim's character for aggression in order for it to be admissible. *Id.* When undertaking this analysis, the Court distinguished cases in which the defendant alleged that the victim was the first aggressor from cases in which the defendant alleged self-defense:

> The actual violent character of the deceased, even though it is unknown to the defendant, is admissible as evidencing the deceased's probable aggression toward the defendant. It is now widely accepted that a defendant may show a pertinent trait of character of the alleged victim that bears on *whether the victim committed an act of aggression* on the particular occasion in conformity with that trait. This is so because, when a controversy arises regarding whether the deceased was the aggressor, a jury's persuasion may be affected by the character of the deceased because it will shed light on the probabilities of the deceased's action. The sole purpose for which evidence of this type is admissible is, from the victim's general turbulent or violent character, to render more probable the evidence that tends to show *an act of violence* at the time he was killed. This probability is evidently not affected in the slightest degree by the defendant's previous knowledge. The light comes from the fact that the victim was the one who was apt or likely to do such an act as the one imputed to him, and not from the defendant's knowledge of the fact.

> *Because the question is what the victim probably did, not what the defendant probably thought the victim was doing, the additional element of communication to the defendant is unnecessary when using character evidence to prove the victim was the aggressor.* The inquiry is one of objective occurrence, not of subjective belief.

> In contrast, *where a defendant charged with murder asserts that he killed in self-defense, his state of mind at the time of the act is material because it is an important element in determining his justification for his belief in an impending attack by the deceased.* The reputation of the deceased for a violent or turbulent disposition is a circumstance that would cause such a belief. However, *unlike evidence tending to show that the victim was the aggressor, the deceased's violent reputation must be known to the defendant if he is to use it to show that he acted in self-defense.* . . . The purpose of this evidence is to show the defendant's state of mind; therefore, it is obvious that the victim's character, as affecting the defendant's apprehensions, must have become known to him, otherwise it is

irrelevant. [*Harris*, 458 Mich 315-317 (quotation marks, citations, and alterations omitted; emphasis added).]

In *People v Edwards*, 328 Mich App 29, 35-36; 935 NW2d 419 (2019), this Court expanded on the Supreme Court's reasoning in *Harris*:

[E]vidence of a victim's aggressive character is admissible in the form of reputation evidence, even if the defendant does not have knowledge of the decedent's character, to show that the decedent was the probable aggressor. With that said, evidence of the decedent's reputation that is not known to the defendant is inadmissible to prove an essential element of self-defense, e.g., a reasonable apprehension of harm. [*Id*. at 36-37.]

In sum, whether the defendant in a homicide case must have known about the alleged victim's character trait of aggression depends on the nature of the defense. If the defendant's stance at trial is that the defendant acted in response to an actual act of aggression taken by the alleged victim and if there is a dispute regarding whether the alleged victim actually did make an act of aggression, then the defendant need not have known about the character trait. This is because the defendant's state of mind is irrelevant to whether the alleged victim actually took an objective action. For example, if a hypothetical defendant argues that he shot the victim because the victim first shot at him and then introduces the character evidence for the purpose of proving that the victim actually did shoot at the defendant, the defendant's knowledge of the character trait is irrelevant.

In this case, defendant's entire encounter with the alleged victim was captured by security cameras. Thus, we know with absolute certainty that the alleged victim did not make an act of aggression immediately before being shot. Indeed, with the benefit of hindsight, we know that defendant did not need to shoot the victim at all because the victim did not have a gun on his person or in his vehicle. Accordingly, defendant's case revolves entirely on defendant's subjective state of mind and whether he reasonably believed he was in mortal danger; there are no objective actions taken by the alleged victim that are at issue. According to defendant, because the victim engaged in disorderly behavior in the store, made comments possibly implying a desire to harm defendant, and reached into his car in a manner consistent with grabbing a gun, defendant reasonably believed that he was justified in shooting the alleged victim. Because defendant did not know that the alleged victim was supposedly on some sort of a terrorist list, this evidence was not relevant for assessing "his justification for his belief in an impending attack by the deceased." *Harris*, 458 Mich at 316.

The lead opinion articulated the above-quoted language from *Harris*, but it did not apply it. In *Harris*, the Supreme Court made it clear that "[t]he *sole purpose* for which evidence" of the alleged victim's violent character may be admitted is "to show an act of violence." *Harris*, 458 Mich at 316 (emphasis added). What is the "act of violence" that was "imputed to" Khogaly by the defense? *Id*. (quotation marks and citation omitted). The lead opinion did not identify one. Indeed, this is a rare case in which we know exactly what happened, and we therefore know that Khogaly did not commit an act of violence. What we do not know, and the reason there will be a trial, is whether defendant reasonably believed Khogaly was going to commit an act of violence if defendant did not intervene. This is a case in which the evidence has been offered by defendant

as "justification for his belief in an impending attack by the deceased," so "it is obvious that [Khogaly's] character, as affecting the defendant's apprehensions, must have become known to him, otherwise it is irrelevant." *Id*. at 317.

Because the issue in this case is "defendant's state of mind," not the actions of the alleged victim, evidence of Khogaly's character was only admissible if defendant knew about it. *Id*. It is undisputed that defendant did not know anything about any possible terrorist connections of the alleged victim, and this evidence is therefore irrelevant and inadmissible. *Id*.

## CURATIVE INSTRUCTIONS

In the world of appellate review, curative instructions reign supreme. Mistake after mistake is brushed to the side with the familiar refrain, "Jurors are presumed to follow their instructions." *People v Horton*, 341 Mich App 397, 405; 989 NW2d 885 (2022). Our appellate system affords instructions so much weight that unpreserved claims of prosecutorial misconduct only warrant reversal if a curative instruction would have been insufficient to alleviate the harm caused by the misconduct. *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008). However, when it is the defense that makes a mistake, jury instructions suddenly carry less weight. In this case, as the preceding analysis makes clear, I believe defense counsel's question was inappropriate. However, if the shoe was on the other foot, this fire would have been extinguished with a curative instruction. Given the deference our caselaw demands be given to jury instructions, I do not understand why defense counsel's mistake warranted a mistrial instead of a curative instruction. I do not believe that a mistrial should have been declared or that a new trial should be conducted. However, I fully recognize that the law in this regard does not comport with my beliefs. Therefore, I do agree with the lead opinion's conclusions regarding the double jeopardy issue.


/s/ Allie Greenleaf Maldonado

-4-