*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JEFFERY EDWARD CLARK,

        Defendant-Appellant.

UNPUBLISHED
October 13, 2025
10:39 AM

No. 367763
Macomb Circuit Court
LC No. 2022-002603-FC

Before: GADOLA, C.J., and MURRAY and YATES, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions of first-degree murder, MCL 750.316(1)(a), possession of a firearm by a felon (felon-in-possession), MCL 750.224f(1), and two counts of carrying a firearm in the commission of a felony (felony-firearm), MCL 750.227b(1). We affirm.

## I. FACTS AND PROCEDURAL HISTORY

On July 4, 2022, defendant and his girlfriend, Tamara Scott, were in Scott's apartment in Roseville when they heard banging on the windows and someone cursing and yelling "come outside." Scott recognized the voice as Jerray Robinson, her ex-boyfriend. Scott called 911, but the call dropped before she was able to speak with the operator. Defendant looked out of the window and saw a black man with a white T-shirt and black jeans fidgeting with something in front of his body, "like he was putting something in his waistband or fixing his waistband." Defendant told Scott he wanted to leave. According to defendant, Scott gave him a gun before they left the apartment. Scott denied giving defendant a gun. They saw Robinson in the parking lot kicking Scott's car. Defendant testified he fired two shots in the air to scare Robinson, then chased him away.

After defendant chased Robinson away, defendant and Scott got into Scott's car and started driving to defendant's house. As they pulled out of the parking lot, they saw Robinson on the sidewalk. Defendant testified that Scott screamed and said Robinson was going to kill her and defendant. Scott testified that defendant pointed a gun at Robinson, who started running. Defendant stopped the car in the middle of the road and chased after Robinson. Defendant

-1-

admitted he shot Robinson, including after Robinson fell to the ground, because he feared Robinson would shoot him in the back once defendant started walking away. Defendant never saw Robinson carrying a weapon during this incident. Robinson died from the gunshot wounds. Defendant was later arrested at a house in Detroit, where officers found a disassembled gun. Five bullets were recovered from Robinson's chest and right arm. A forensic analysis determined the bullets were fired from the gun found at the house where defendant was arrested.

Defendant was charged with first-degree murder, felon-in-possession, and two counts of felony-firearm. Scott was charged with being an accessory after the fact to a felony, and pleaded guilty to that charge before defendant's trial. Under her plea agreement, the prosecution would not authorize additional charges stemming from this incident contingent on Scott's continued cooperation and testimony. Defense counsel did not request Scott's plea agreement in discovery. At trial, Scott testified she pleaded guilty to being an accessory and agreed to cooperate. On cross-examination, she denied receiving a reduced plea offer or a deal to testify. The prosecution objected, arguing defense counsel mischaracterized Scott's testimony, and the trial court sustained the objection.

Defendant testified at trial. Defense counsel asked defendant, "[W]hen you were with Ms. Scott did she ever inform [you] that she had an issue with Mr. Robinson?" The prosecutor objected on hearsay grounds before defendant could answer. The trial court agreed it was hearsay. Defense counsel replied, "Okay. I'll move on judge." The trial court asked, "Any response?" And defense counsel stated, "Yeah, I'll move on." Defense counsel then ceased his line of questioning and shifted to asking questions about the night of the murder.

After defendant filed this appeal, he moved for a new trial in the trial court. He argued: (1) the prosecutor erred by not correcting Scott's false testimony regarding her plea agreement by omitting the information that she would not be subject to additional charges; (2) the trial court erred by denying a voluntary manslaughter instruction; and (3) defense counsel was ineffective regarding the above issues and for failing to respond to the prosecutor's hearsay objection. Regarding this last issue, the trial court requested an offer of proof on what Scott told defendant regarding her relationship with Robinson. That offer of proof asserted Scott told defendant Robinson had abused her during their relationship. It also asserted Scott told defendant that Robinson carried a gun and previously shot and killed people. Defendant asserted the proffered evidence was not hearsay because it was offered for its effect on defendant.

The trial court denied the motion for a new trial. The trial court's opinion and order held that, although Scott's testimony gave the false impression she received nothing for her cooperation, her testimony did not have "a material effect on the jury's judgement [sic]." Second, defendant was not entitled to a voluntary manslaughter instruction because there was no adequate provocation, and he had sufficient time to cool off before shooting Robinson. Third, defendant did not demonstrate he was prejudiced by trial counsel's failure to discover Scott's plea agreement or respond to the hearsay objection. Finally, defense counsel's performance in arguing for a voluntary manslaughter instruction was not deficient. Defendant now appeals.

## II. PROSECUTORIAL ERROR—FALSE TESTIMONY

Defendant argues his due-process rights were violated when the prosecution elicited false testimony regarding Scott's plea agreement. We disagree.

## A. STANDARD OF REVIEW

"To preserve a claim of prosecutorial misconduct,[1] the defendant must make a timely and specific objection to the conduct at trial." *People v Clark*, 330 Mich App 392, 433; 948 NW2d 604 (2019) (footnote added). Defense counsel did not object when Scott testified regarding her plea agreement, so this issue is unpreserved. This Court reviews unpreserved claims of prosecutorial error for plain error. *Id*. "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). To meet the third element, a defendant must show the error affected the outcome of the trial court proceedings. *Id*. Even if all three requirements are met, "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (quotation marks and citation omitted).

## B. DISCUSSION

Defendant argues he is entitled to a new trial because his due-process rights were violated when the prosecutor did not correct Scott's false testimony. "If a conviction is obtained through the knowing use of perjured testimony, it must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *People v Aceval*, 282 Mich App 379, 389; 764 NW2d 285 (2009) (quotation marks and citation omitted). A prosecutor has an affirmative duty to correct false testimony, "and this duty specifically applies when the testimony concerns renumeration for a witness's cooperation." *People v Smith*, 498 Mich 466, 476; 870 NW2d 299 (2015). While a prosecutor "need not correct every instance of mistaken or inaccurate testimony, it is the effect of a prosecutor's failure to correct false testimony that is the crucial inquiry for due process purposes[.]" *Id*. (quotation marks and citations omitted).

Defendant has not shown plain error resulting from Scott's testimony because he has not demonstrated Scott testified falsely. Scott was charged with, and pleaded guilty to, being an accessory after the fact. The prosecution agreed to not bring additional charges against Scott stemming from this incident contingent on Scott's cooperation and truthful testimony. Scott testified she pleaded guilty as charged and agreed to cooperate with the prosecution. When defense counsel claimed the prosecution said she received a deal for her testimony, she stated this was incorrect. Scott denied receiving a reduced plea offer, or any deal for her testimony. Neither Scott nor the prosecutor clarified she would not be subject to additional charges, if she cooperated with

---

[1] See *People v Jackson (On Reconsideration)*, 313 Mich App 409, 425 n 4; 884 NW2d 297 (2015) (quotation marks omitted) ("[A]lthough the term 'prosecutorial misconduct' has become a term of art often used to describe any error committed by the prosecution, claims of inadvertent error by the prosecution are better and more fairly presented as claims of 'prosecutorial error,' with only the most extreme cases rising to the level of 'prosecutorial misconduct.' ").

the prosecution. However, the transcript indicates Scott was not lying about her plea agreement, but rather responding to defense counsel's mischaracterization of her direct testimony. This case is unlike *Smith*, 498 Mich at 471-474, in which the witness repeatedly "denied having been paid in connection with the defendant's case[,]" even though he was a paid informant. Although Scott's testimony regarding her plea agreement omitted the fact that she would not be subject to additional charges, the prosecutor did not exploit any confusion by reminding the jury of that testimony, as the prosecutor did in *Smith*. *Id*. at 474. Scott's testimony did not create a false impression regarding the terms of her plea agreement; Scott was truthful that she pleaded guilty in exchange for her testimony. Therefore, the prosecution did not have an affirmative duty to correct the testimony. Defendant's due-process rights were not violated and he is not entitled to a new trial.

## III. INSTRUCTIONAL ERROR—VOLUNTARY MANSLAUGHTER

Defendant asserts the trial court erred by denying his request for a voluntary manslaughter instruction. We disagree.

## A. STANDARD OF REVIEW

This Court reviews claims of instructional error de novo. *People v Kowalski*, 489 Mich 488, 501; 803 NW2d 200 (2011). "Jury instructions that involve questions of law are also reviewed de novo." *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006). However, a trial court's ruling as to whether an instruction applies to the facts of a case is reviewed for an abuse of discretion. *People v Jones*, 497 Mich 155, 161; 860 NW2d 112 (2014). An abuse of discretion occurs when the trial court's ruling "falls outside the range of principled outcomes." *Id*.

## B. DISCUSSION

Manslaughter is a necessarily included lesser offense of murder. *Gillis*, 474 Mich at 137. The element distinguishing murder from manslaughter is malice, i.e., "an intent to kill, an intent to commit great bodily harm, or an intent to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result." *Id*. at 138 (quotation marks and citation omitted). "[F]or an act to be considered voluntary manslaughter, the defendant must kill in the heat of passion, the passion must be caused by adequate provocation, and there cannot be a lapse of time during which a reasonable person could control their passions." *People v Yeager*, 511 Mich 478, 489; 999 NW2d 490 (2023).

Defendant argues the trial court erred by holding there was no adequate provocation. Defendant argues that, when the trial court denied his request for an instruction on voluntary manslaughter, it did not have the benefit of the *Yeager*, 511 Mich at 478, opinion. Our Supreme Court decided *Yeager* the day after the trial court's jury instructions were given. However, *Yeager* is not applicable here. Defendant argues *Yeager* dictates a defendant need not have acted specifically out of anger to be entitled to a voluntary manslaughter instruction. *Id*. at 492. The *Yeager* opinion clarified that caselaw does not limit the requisite emotional state of "heat of passion" to feelings of anger, but can include any "emotional excitement," including fear. *Id*. at 492-493. However, the trial court did not deny defendant's request for a voluntary manslaughter instruction because he did not have the requisite emotional state. Rather, the trial court found that the evidence offered at trial, that Robinson banged on Scott's windows while yelling, did not

-4-

support a finding of adequate provocation. Based on the trial record, we cannot find the trial court abused its discretion by declining to give a voluntary manslaughter instruction.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues his trial counsel was ineffective for failing to (1) investigate Scott's plea agreement, (2) advance sufficient arguments regarding a voluntary manslaughter instruction, and (3) adequately respond to an invalid hearsay objection. We disagree.

## A. STANDARD OF REVIEW

An ineffective assistance of counsel claim presents a mixed question of fact and constitutional law. *People v Hoang*, 328 Mich App 45, 63; 935 NW2d 396 (2019). This Court reviews a trial court's findings of fact for clear error, and constitutional questions de novo. *Id*. Although defendant preserved this claim by moving for a new trial or evidentiary hearing, because the trial court did not hold a *Ginther*[2] hearing, this Court's review "is limited to mistakes apparent on the record." *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).

## B. DISCUSSION

The Sixth Amendment protects a defendant's right to effective assistance of counsel. US Const, Am VI; *Strickland v Washington*, 466 US 668, 685-686; 104 S Ct 2052; 80 L Ed 2d 674 (1984). A defendant must show (1) his counsel's performance fell below an objective standard of reasonableness, and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different. *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). "[A] defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy." *Id*. at 52, citing *Strickland*, 466 US at 689.

Defendant first asserts defense counsel was ineffective for not investigating the terms of Scott's plea agreement.[3] While this Court presumes sound trial strategy, "a court cannot insulate review of counsel's performance by calling it trial strategy." *Trakhtenberg*, 493 Mich at 52. A defense counsel has a duty to base their strategic decisions on reasonable investigation. *Id*. Here, defendant has not shown counsel's investigation of Scott's plea agreement was deficient. MCR 6.201(B)(5) requires the prosecutor, upon request, to disclose "any plea agreement, grant of immunity, or other agreement for testimony in connection with the case." There is no indication defense counsel requested Scott's plea agreement in discovery. Yet there is also no evidence supporting defendant's claim counsel did not access the plea agreement on the 16th Circuit Court's public docket via the website. The terms of the plea agreement are available on the public docket which is accessible on the court website. Indeed, defense counsel questioned Scott regarding the terms of the agreement, until the prosecutor objected. Defense counsel could have obtained this

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[3] Because the standards for plain error review and ineffective assistance are distinct, defendant can obtain relief under this issue, even though he did not demonstrate plain error resulting from Scott's testimony. See *People v Hughes*, 506 Mich 512, 523; 958 NW2d 98 (2020).

information without a discovery request. Based on this record, defendant has not shown counsel abandoned his duty to investigate Scott's plea agreement. See *Trakhtenberg*, 493 Mich at 52.

Second, defense counsel's performance regarding his request for a voluntary manslaughter instruction was not deficient. Defendant argues counsel should have been aware our Supreme Court's decision in *Yeager* was pending and made additional arguments based on that case. "[C]ounsel is not ineffective for failing to make frivolous or meritless objections." *People v Posey*, 512 Mich 317, 342 n 10; 1 NW3d 101 (2023). Any argument based on a pending, nonbinding case would have been meritless. *Id*. As discussed above, even if *Yeager* was binding at the time of defendant's trial, any argument based on that case would have been meritless because it does not apply to the facts of this case.

Third, defendant argues his counsel was ineffective because counsel did not respond to the prosecutor's hearsay objection. When defense counsel began to question defendant about Scott's relationship with Robinson, the prosecutor argued any such testimony would be hearsay, and the trial court sustained that objection. Defense counsel did not respond to the objection and moved on to a different line of questioning. After defendant moved for a new trial, his appellate counsel filed an offer of proof describing what defendant would have testified about the relationship. According to defendant, Scott described Robinson's repeated abuse and violent behavior, which led defendant to believe Robinson intended to kill him. Defendant asserted this evidence was not hearsay, because it was offered for its effect on him, not its truth. He also argues the proffered evidence would be probative of his self-defense claim.

Even if defense counsel was deficient in not responding to the hearsay objection, counsel's failure to present the evidence in the offer of proof at trial did not prejudice defendant. Defendant argues his knowledge of Robinson's alleged violent behavior would have supported his claim of self-defense. A deceased's violent reputation can be material to a self-defense claim, specifically the defendant's state of mind. *People v Harris*, 458 Mich 310, 316; 583 NW2d 680 (1998) (citation omitted). Yet a defendant must still reasonably believe deadly force is necessary to prevent imminent death or great bodily harm. MCL 780.972(1)(a). None of defendant's proffered evidence, relating to alleged earlier acts, demonstrates a reasonable fear Robinson would have imminently killed him, or inflicted great bodily harm. At trial, defendant claimed he chased Robinson so Robinson "couldn't turn around and draw a weapon." But defendant acknowledged he never saw Robinson with a weapon. Defendant shot Robinson while Robinson was running away, then fired while he was laying on the ground, again without any indication he was armed. There is no reasonable probability defendant's claim of self-defense would have been successful if he could have presented the proffered evidence at trial.

Each of defendant's ineffective assistance claims lack merit, and he is not entitled to a new trial.

Affirmed.

/s/ Michael F. Gadola
/s/ Christopher M. Murray
/s/ Christopher P. Yates