# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

HERBERT DEWEY BALDRIDGE,

      Defendant-Appellant.

UNPUBLISHED
October 31, 2017

No. 333435
Wayne Circuit Court
LC No. 15-007271-01-FC

Before: BORRELLO, P.J., and MURPHY and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant appeals as of right his jury conviction of second-degree murder, MCL 750.317. The trial court sentenced defendant as a second-offense habitual offender, MCL 769.10, to 300 to 600 months' imprisonment. For the reasons set forth in this opinion, we affirm defendant's conviction, but vacate his sentence and remand for resentencing.

## I. BACKGROUND

This appeal arises from the death of Jamiall Jameson following an altercation at Liberty Liquor Store I in Detroit, Michigan, on June 1, 2013. Billy Baldridge, (Baldridge) defendant's cousin, testified that on June 1, 2013, he, defendant, and two other individuals, known as "Derrell" and "Little Lamont," drove to the liquor store to buy cigarettes and liquor. According to Baldridge, he walked into the liquor store first and saw the victim. Defendant and Derrell entered the store behind Baldrige. When Baldridge turned around, defendant and the victim were fighting and Baldridge jumped in and threw punches. Based on a surveillance video of the altercation, Baldridge agreed that it appeared that defendant delivered the first punch. Baldridge testified that the pair continued to throw punches at the victim until the store owner said that he was going to call the police, precipitating Baldridge and defendant to leave the store. Baldridge testified that he and defendant went in different directions following the altercation with the victim.

Latif Danyal, the owner of the liquor store, testified that he was working in the store with his cashier on the evening of June 1, 2013. Although he did not personally witness the altercation, he found a piece of a knife, approximately 4 inches long, on the floor. Not knowing that the knife had anything to do with the altercation, he picked it up and threw it away so no one would step on it.

-1-

Following a call from central dispatch at approximately 10:00 p.m., Officer McLean of the Detroit Police Department and his partner searched vacant lots for approximately 10 minutes before they found the victim who was yelling and raising his hand. The victim had multiple head wounds and his white T-shirt was completely covered in blood. It appeared to McLean that the victim had stab wounds to his stomach. Emergency Medical Services arrived and took the victim to the hospital where he later died, the autopsy revealing that the victim had three stab wounds—the fatal wound to his left chest that penetrated the right ventricle of his heart, one to his right upper abdomen that penetrated his liver, and one in the middle of his abdomen. The coroner ruled the cause of death homicide.

Police officers began to retrace the victim's steps leading them eventually back to the party store where the altercation occurred. There they found a knife blade and knife handle in the dumpster at the party store. The knife had a 4-inch wooden handle and a 4-inch blade. Forensic evidence revealed that there were at least three donors of DNA on the knife handle, however police were unable to make any conclusions regarding the source of the DNA. As to the knife blade, forensic examiners testified that the victim's DNA matched the blood on the knife blade.

After the prosecution rested its case, defendant moved for a directed verdict, arguing in pertinent part that with regard to the first-degree murder charge, there was no evidence of premeditation or deliberation. Defendant argued that the incident took place in a heat of passion, and no planning was involved. The prosecution argued that the best evidence of premeditation was the video, which showed that defendant immediately attacked the victim when he entered the store and that the victim was holding only a plastic bottle and a bag. The prosecution also argued that a rational trier of fact could find that the attack was planned based on the video and the evidence of a dispute between defendant and the victim. The trial court denied the motion, finding that it was for the jury to decide whether there was sufficient evidence of premeditation and deliberation.

Following denial of his motion for a directed verdict, defendant testified on his own behalf. During his testimony it was revealed that defendant had left the state following the altercation to help support his girlfriend and child. He was apprehended in On July 31, 2015 in Arlington Texas and was transported back to Michigan.

At trial, defendant testified that he did not know that the victim was at the store and he was not carrying a knife. However, as defendant approached the door, he saw the victim and it appeared that he had something in his hand. Defendant stated he was scared because the victim, in August 2012 had previously punched defendant, causing him to receive 10 stitches in his chin. According to defendant, after punching defendant the victim left in his car, drove at people in the street, then ran into a tree, got out of his car, started running, and shot at defendant and others with a gun. On a subsequent occasion, the victim had a gun and, upon seeing defendant, said, "I got a beef with him, I'm going to get rid of him."

When the victim raised his hand in the liquor store, defendant saw the item in his hand shining and believed it was a gun. Fearing for his safety, defendant testified he tried to knock the item out of the victim's hand and they started fighting. Defendant had recently had a traumatic brain injury and a brain tumor, so he feared receiving a blow to his head. During the struggle,

defendant grabbed something from the victim's hand and swung, however defendant testified that he did not know that it was a knife and he could not recall stabbing the victim.

During trial, defendant requested that the trial court give M Crim JI 16.9, which is "Voluntary Manslaughter as a Lesser Included Offense of Murder." The prosecution objected, arguing that there was no evidence of provocation because the victim made no gesture or threatening movement. Defendant argued that he believed the victim raised his hand and that there was something in the victim's hand. Defendant added that the video showed that the stabbing occurred during the fight when there was no time for blood to cool. The trial court denied defendant's request to give the instruction and the jury found defendant guilty of the lesser-included offense of second-degree murder.

On May 16, 2016, defendant's sentencing hearing was held wherein the prosecution argued that Offense Variable (OV) 5, psychological injury to a member of the victim's family, should be scored at 15 points based on the testimony of the victim's mother. Defendant argued that OV 5 was correctly scored at 0 points because there was no evidence of any psychological injury. The trial court found that the victim's mother was very tearful on the stand and had to listen to the call to the 911 operator. The trial court scored OV 5 at 15 points, bringing defendant's total OV score to 105 points, which placed him in the C-III cell of the sentencing grid for Class M2 offenses. See, MCL 777.61. His minimum sentence guidelines range, as a second-offense habitual offender, was 225 to 468 months or life. The trial court sentenced defendant to 300 to 600 months' imprisonment and this appeal ensued.

I. ANALYSIS

A. DIRECTED VERDICT

Defendant argues that the trial court erred by denying his motion for a directed verdict. Generally, "[i]n reviewing a trial court's decision regarding a motion for directed verdict, we review the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Schrauben*, 314 Mich App 181, 198; 886 NW2d 173 (2016) (citation and quotation marks omitted). In this case, however, it is unnecessary to review the evidence. Because defendant was acquitted of first-degree murder, and he does not argue that it was improper for the jury to consider the lesser offense of second-degree murder, defendant is not entitled to relief.

In *People v Graves*, 458 Mich 476, 486-487; 581 NW2d 229 (1998), our Supreme Court stated:

> [A] defendant has no room to complain when he is acquitted of a charge that is improperly submitted to the jury, as long as the defendant is actually convicted of a charge that was properly submitted to the jury. Such a result squares with respect for juries. Further, not to adopt this view is to countenance a misuse of judicial resources by automatically reversing an otherwise valid conviction.

In *People v Moorer*, 246 Mich App 680, 682; 635 NW2d 47 (2001), the defendant argued that the trial court erred by denying his motion for a directed verdict of acquittal of a first-degree

murder charge. This Court held that because the defendant did not dispute that the charge of second-degree murder was properly submitted to the jury, "any error arising from the submission of the first-degree murder charge to the jury was rendered harmless when the jury acquitted defendant of that charge." *Id*. at 682-683.

Nonetheless, the Court in *Graves* held that if "sufficiently persuasive indicia of jury compromise are present, reversal may be warranted in certain circumstances." *Graves*, 458 Mich at 487-488. This Court stated that a different result may be reached:

> where the jury is presented an erroneous instruction, and: 1) logically irreconcilable verdicts are returned, or 2) there is clear record evidence of unresolved jury confusion, or 3) as the prosecution concedes in the alternative, where a defendant is convicted of the next-lesser offense after the improperly submitted greater offense. [*Id*. at 488.]

In this case, defendant does dispute that the charge of second-degree murder, of which he was convicted, was properly submitted to the jury. Accordingly, any error arising from the submission of the first-degree murder charge to the jury was rendered harmless when the jury acquitted him of that charge. See *Moorer*, 246 Mich App at 682-683. Nonetheless, it is necessary to determine whether there was "sufficiently persuasive indicia of jury compromise." *Graves*, 458 Mich at 487. The first two situations identified in *Graves* are not presented here because the verdict was not logically inconsistent and there is no record evidence of unresolved jury confusion. See *id*. at 488. The jury did, however, convict defendant of second-degree murder, which is the next-lesser offense of the allegedly improperly submitted greater offense of first-degree murder. See *id*.

On appeal, we cannot glean from defendant's arguments facts which if true would be legally sufficient evidence of jury compromise. While under *Graves*, 458 Mich at 488, the fact that a defendant is convicted of a next-lesser offense *may* indicate jury compromise, the mere fact that defendant was convicted of a next-lesser offense does not automatically indicate jury compromise. In this case, the trial court instructed the jury that its verdict must be unanimous and "represent the individual considered judgment of each juror." It also instructed the jurors not to "give up an honest opinion about the case because other jurors disagree with you or just for the sake of reaching a verdict." Jurors are presumed to follow their instructions. *Id*. at 486. Defendant does not challenge the sufficiency of the evidence for his second-degree murder conviction, or explain how it was the result of jury compromise. On this record there exists only defendant's conviction of the next-lesser offense and no other evidence of jury compromise. Accordingly, any error in the submission of the first-degree premeditated murder charge to the jury was harmless and no relief is warranted.[1]

## B. JURY INSTRUCTION ON VOLUNTARY MANSLAUGHTER

---

[1]

-4-

Next, defendant argues that the trial court erred by denying his request for an instruction on voluntary manslaughter. In *People v Mitchell*, 301 Mich App 282, 286; 835 NW2d 615 (2013), this Court stated:

> We review a claim of instructional error involving a question of law de novo, but we review the trial court's determination that a jury instruction applies to the facts of the case for an abuse of discretion. However, not all instructional error warrants reversal. Reversal is warranted only if after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative. [T]he effect of the error is evaluated by assessing it in the context of the untainted evidence to determine whether it is more probable than not that a different outcome would have resulted without the error. The verdict is undermined when the evidence clearly supports the requested lesser included instruction that was not given to the jury. [Citations and quotation marks omitted.]

This Court further stated:

> When a defendant is charged with murder, the trial court must give an instruction on voluntary manslaughter if the instruction is supported by a rational view of the evidence. To prove that a defendant committed voluntary manslaughter, one must show that the defendant killed in the heat of passion, the passion was caused by adequate provocation, and there was not a lapse of time during which a reasonable person could control his passions. However, provocation is not an element of voluntary manslaughter; rather, it is a circumstance that negates the presence of malice. . . . [T]he degree of provocation required to mitigate a killing from murder to manslaughter is that which causes the defendant to act out of passion rather than reason. Further, [i]n order for the provocation to be adequate it must be that which would cause a reasonable person to lose control. Whether the provocation was reasonable is a question of fact; but if no reasonable jury could find that the provocation was adequate, the court may exclude evidence of the provocation. [*Id.* at 286-287 (citations and quotation marks omitted; alterations in original.]

To be entitled to an instruction on voluntary manslaughter, "there must be sufficient evidence to allow a rational trier of fact to find adequate provocation by a preponderance of the evidence." *People v Darden*, 230 Mich App 597, 604; 585 NW2d 27 (1998).

In *Mitchell*, 301 Mich App at 287-288, this Court concluded that the trial court abused its discretion by failing to give a voluntary manslaughter instruction where there was evidence to support a finding of provocation, including that the victim owed the defendant a small sum of money, the defendant had been threatening and harassing the victim, the victim said he was going to "beat [defendant's] ass," and the victim was the initial aggressor by using profanity and striking the defendant with a baseball bat. In *Darden*, 230 Mich App at 604, this Court similarly found sufficient evidence to support a finding of adequate provocation where the defendant shot at two men who were stealing a transmission from his yard, a verbal confrontation occurred

between the defendant and the two men, and the defendant thought that one of the men had a gun.

In this case, defendant has failed to introduce sufficient evidence of provocation such that it would negate the killing. 301 Mich App at 286. Although there was evidence that the victim had been violent toward defendant in the past, there was no indication that the victim said anything or made any movement toward defendant. There was no evidence that the victim even saw defendant entering the store. The sight of an even previously-violent person holding a weapon, without more, would not cause a reasonable person to lose control of his passions. See *Mitchell*, 301 Mich App at 286-287. Further, defendant's fear of receiving a blow to his head and his testimony that he had a panic attack cannot be considered. See *People v Sullivan*, 231 Mich App 510, 519-520; 586 NW2d 578 (1998) ("by definition, any special traits of the particular defendant cannot be considered[;] [t]he fact that defendant may have had some mental disturbance is not relevant to the question of provocation"), aff'd 461 Mich 992 (2000). Hence, our review of the record presented in this matter leads us to conclude that the evidence presented did not allow a rational trier of fact to find adequate provocation by a preponderance of the evidence. See *Darden*, 230 Mich App at 604. Accordingly, defendant is not entitled to relief on this issue.

Defendant's claim that a voluntary manslaughter instruction should have been given in addition to the self-defense instruction because the instruction for self-defense was based on the trial court's finding that defendant stabbed the victim in a heat of passion is also without merit. The trial court instructed the jury that in order to find that defendant acted in self-defense, defendant "must have honestly and reasonably believed that he was in danger of being killed or seriously injured," defendant "must have been afraid of death or serious physical injury," and defendant "must have honestly and reasonably believed that what he did was immediately necessary." Contrary to defendant's assertion, the defense of self-defense does not require a finding that defendant acted in a heat of passion, see MCL 780.972(1)(a), and the trial court did not so instruct the jury. The trial court's decision to instruct the jury on self-defense does not establish that it erred by refusing to give an instruction for voluntary manslaughter.

Even if we were to conclude that the trial court erred by refusing to instruct the jury on voluntary manslaughter, reversal is only required if "the error undermined the reliability of the jury verdict." *Mitchell*, 301 Mich App at 288-289. In *Mitchell*, the jury made an inquiry regarding whether it had any option other than convicting the defendant of first-degree murder or second-degree murder or finding the defendant not guilty strongly suggested that it would have convicted the defendant of a lesser charge if it had been given the opportunity to do so. *Id.* at 289. That the jury made such an inquiry seemingly provided the basis on which this Court granted the requested relief in *Mitchell*. Here, there was no indication that the jury would have convicted defendant of a lesser charge and, in fact, the jury rejected defendant's claim of self-defense. Accordingly, even presuming instructional error by the trial court in this matter, we conclude that any error was not outcome determinative. See *id*.

## C. OFFENSE VARIABLE 5

Defendant next argues that the trial court erred by scoring offense variable (OV) 5 of the sentencing guidelines at 15 points.

In *People v Calloway*, ___ Mich ___, ___; 895 NW2d 165 (2017) (Docket Nos. 153636; 153751);[2] slip op at 4, the Michigan Supreme Court stated:

> A trial court's factual determinations must be supported by a preponderance of the evidence and are reviewed for clear error. Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo. [Citations and quotation marks omitted.]

"OV 5 is scored when a homicide or homicide-related crime causes psychological injury to a member of a victim's family." *Calloway*, ___ Mich at ___; slip op at 4. MCL 777.35 governs OV 5 and provides:

> (1) Offense variable 5 is psychological injury to a member of a victim's family. Score offense variable 5 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:
>
> (a) Serious psychological injury requiring professional treatment occurred to a victim's family .................................................................................... 15 points
>
> (b) No serious psychological injury requiring professional treatment occurred to a victim's family ............................................................................. 0 points
>
> (2) Score 15 points if the serious psychological injury to the victim's family may require professional treatment. In making this determination, the fact that treatment has not been sought is not conclusive.

The Court in *Calloway* stated that "a trial court properly assesses 15 points for OV 5 when '[s]erious psychological injury requiring professional treatment occurred to a victim's family.' " *Calloway*, ___ Mich at ___; slip op at 5 (citation omitted). The Court explained:

> While MCL 777.35(1)(a) requires the injury to be one "requiring professional treatment," the statute does not require proof that a victim's family member has already sought or received, or intends to seek or receive, professional treatment. The second subsection makes this clear by stating that "the fact that treatment has not been sought is not conclusive," and by specifying that a 15–point score is appropriate if the injury "*may* require professional treatment."
>
> Although this threshold may seem low, trial courts must bear in mind that OV 5 requires a "*serious* psychological injury." In this context, "serious" is

---

[2] The State, which filed its brief on September 29, 2017, did not cite our Supreme Court's decision in *Calloway*.

defined as "having important or dangerous possible consequences." Thus, in scoring OV 5, a trial court should consider the severity of the injury and the consequences that flow from it, including how the injury has manifested itself before sentencing and is likely to do so in the future, and whether professional treatment has been sought or received. However, even when professional treatment has not yet been sought or received, points are properly assessed for OV 5 when a victim's family member has suffered a serious psychological injury that may require professional treatment in the future. [*Id*. at ___; slip op at 6-7 (citations omitted).]

The Court rejected this Court's holding that "in order to properly assess points for OV 5 in the absence of evidence that a victim's family member sought or received treatment, there must at least be evidence that a victim's family member had a present intention to seek or receive professional treatment." *Id*. at ___; slip op at 7.

In *Calloway*, the Court held that the trial court correctly concluded that two members of the victim's family suffered serious psychological injuries that may require professional treatment in the future. *Calloway*, ___ Mich at ___; slip op at 9-10. The Court concluded that there was ample evidence of the seriousness of the injuries and their long-lasting effects to support a 15-point score where (1) the victim's stepfather stated that the victim's mother was having a difficult time, (2) the victim's stepfather said that the incident had a "tremendous, traumatic effect on him and his family," (3) the victim's father stated that his family felt horrible, noted that the victim had a four-month-old baby, and expressed his pain, and (4) the victim's stepfather stated that he had thought about the incident every day and would probably think about it every day for the rest of his life. *Id*. at ___; slip op at 9-10.

Here, the trial court did not have the benefit of our Supreme Court's decision in *Calloway* when rendering its decision. Additionally, it appears that the trial court made its decision on how to score OV 5 prior to hearing from the victim's mother, Ms. Williams, whose testimony provides the possible basis for scoring OV 5. Hence, in order to ensure that the trial court has an opportunity to properly consider *Calloway* and all of the pertinent testimony adduced both during trial and at the sentencing hearing, we vacate the trial court's prior scoring of OV 5 and remand for a new determination as to the proper score for OV 5.

By way of assistance to the trial court, on remand, we point out the salient factors which the trial court may take into consideration. In *People v Steanhouse*, 313 Mich App 1, 39; 880 NW2d 297 (2015), rev'd in part on other grounds __ Mich __ (2017), this Court indicated that for purposes of scoring OV 5, it is proper to weigh and consider "[t]he trial court's opportunity to observe the demeanor of [the victim's family] during their testimony[,]" along with victim impact statements made at a sentencing hearing, as well as the traumatic nature of the circumstances surrounding the offense. Under OV 5, a court is directed to "[s]core 15 points if the serious psychological injury to the victim's family may require professional treatment." MCL 777.35(2). However, "[i]n making this determination, the fact that treatment has not been sought is not conclusive." *Id.*

Assuming for the sake of argument that the traumatic nature of the 911 recording and Ms. Williams's very tearful trial testimony were inadequate to support the assessment of 15 points for

OV 5, on remand, the trial court may also take into consideration Ms. Williams's statement at the sentencing hearing. If her statement and the other accompanying evidence plainly reveals serious psychological injury, impacting her health and her ability to sleep, eat, function, and carry on existing familial relationships, the trial court should assign the correct score to OV 5 to reflect those findings.

## II. DEFENDANT'S STANDARD 4 BRIEF

### A. BINDOVER ON FIRST-DEGREE MURDER

In a pro se brief filed pursuant to Administrative Order 2004-6, Standard 4, defendant argues that the district court abused its discretion by binding him over on the charge of first-degree premeditated murder.[3] Defendant did not preserve this issue by raising it in a motion to quash in the circuit court. *People v Noble*, 238 Mich App 647, 658; 608 NW2d 123 (1999). Therefore, this Court's "review is limited to determining whether defendant has demonstrated a plain error that affected substantial rights." *Id.*

In *Moorer*, 246 Mich App at 682, this Court held that where the defendant was acquitted of first-degree murder and failed to dispute that the jury verdict of second-degree murder was supported by the evidence, any error in the sufficiency of the proofs for first-degree murder at the preliminary examination was considered harmless. Similarly, defendant was acquitted of the first-degree murder charge and he does not dispute that the jury verdict of second-degree murder was supported by the evidence. Therefore, any error in binding defendant over for trial on the charge of first-degree premediated murder did not affect defendant's substantial rights.

### B. THE VICTIM'S SPECIFIC INSTANCES OF VIOLENCE

Defendant also argues that the trial court abused its discretion by refusing to allow him to present witness testimony regarding the victim's specific instances of violence, thereby depriving him of his constitutional right to present a defense.

"To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). At trial, defendant attempted to call Tomika Knight to testify regarding specific instances of violence by the victim in order to show defendant's state of mind, but the trial court precluded the testimony. Thus, defendant's evidentiary challenge is preserved. Defendant did not, however, argue that he was denied the constitutional right to present a defense. Therefore, his constitutional claim is unpreserved.

This Court reviews a trial court's decision to exclude evidence for an abuse of discretion and its preliminary legal questions regarding admissibility de novo. *People v Bass*, 317 Mich App 241, 255; 893 NW2d 140 (2016). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes. [A] trial court's

---

[3] In its brief on appeal, the State did not address the issues raised in defendant's Standard 4 brief.

decision on a close evidentiary question ordinarily cannot be an abuse of discretion." *Id*. at 256 (citations and quotation marks omitted; alteration in original). "Unpreserved constitutional issues are reviewed for plain error affecting a defendant's substantial rights. An error is plain if it is clear or obvious. An error affected a defendant's substantial rights if it affected the outcome of the lower court proceedings." *People v Bosca*, 310 Mich App 1, 47; 871 NW2d 307 (2015) (citations omitted).

In *People v Orlewicz*, 293 Mich App 96, 104; 809 NW2d 194 (2011), remanded on other grounds by 493 Mich 916 (2012), this Court explained:

> Evidence concerning the aggressive character of a homicide victim, even if the defendant was unaware of it at the time, is admissible in furtherance of a self-defense claim to prove that the victim was the probable aggressor. MRE 404(a)(2); *People v Harris*, 458 Mich 310, 315-316; 583 NW2d 680 (1998). However, this type of character evidence may only be admitted in the form of reputation testimony, not by testimony regarding specific instances of conduct unless the testimony regarding those instances is independently admissible for some other reason or where character is an essential element of a claim or defense. MRE 405; *Harris*, 458 Mich at 318-319. The victim's character is not an essential element of defendant's self-defense claim.

In *Harris*, 458 Mich at 319, the Court relied on this Court's decision in *People v Cooper*, 73 Mich App 660; 252 NW2d 564 (1977), as "indicating that specific acts may not be shown to establish that the victim was the aggressor; specific acts, however, may be shown to establish reasonable apprehension of harm."

During trial, the prosecution filed a motion to preclude defendant from calling witnesses to testify regarding specific acts of the victim under MRE 404(a)(2) and MRE 405(b). Defendant intended to present the testimony of Knight, who would testify regarding an act of violence by the victim in order to show defendant's state of mind and show that the victim was dangerous. According to defense counsel, Knight would have testified that the victim struck defendant, got into his car and drove toward defendant, and then fired shots from a pistol. The prosecution argued that a witness could testify regarding reputation and opinion, but only defendant could testify regarding specific instances of conduct. The trial court would not allow the testimony about the incident unless it came from defendant himself.

Defendant argues that the victim's specific instances of violence should have been admitted to show his reasonable apprehension of harm. To the extent that defendant sought to show his state of mind, or his reasonable apprehension of harm, the evidence was admissible. *Harris*, 458 Mich at 319. Accordingly, the trial court abused its discretion by refusing to admit the evidence for this purpose. *Bass*, 317 Mich App at 255.

Having found that the trial court in not admitting the testimony, we next turn to whether the error requires reversal. "[A] preserved, nonconstitutional error is not a ground for reversal unless after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative." *People v Lukity*, 460 Mich 484, 496; 596 NW2d 607 (1999) (citation and quotation marks omitted). In this case, defendant

-10-

testified on his own behalf at trial and described the exact acts of violence about which Knight would have testified. As previously stated, defendant testified that in August 2012, the victim punched him, causing him to receive 10 stitches in his chin. He testified that the victim then attempted to hit people with his vehicle, and then fired shots at defendant and others with a gun. Defendant also testified regarding additional acts of violence, including that he saw the victim with a gun on a subsequent occasion, and upon seeing defendant, the victim said, "I got a beef with him, I'm going to get rid of him." Defendant further testified that he had seen the victim with a gun on at least seven occasions. Given defendant's testimony regarding the victim's acts of violence, we cannot ascertain how the trial court's refusal to allow Knight's testimony affected the outcome of the trial. The complained of testimony was admitted, albeit by the defendant rather than Knight, however the jury heard all of the testimony that Knight would have given. Thus, reversal is not warranted. For the same reason, the trial court's refusal to allow defendant to call Knight in support of his defense did not affect defendant's substantial rights. See *Bosca*, 310 Mich App at 47.[4]

## C. INEFFECTIVE ASSISTANCE OF COUNSEL

Lastly, defendant argues that trial counsel was ineffective for failing to negotiate a more favorable plea offer. Because defendant failed to raise this claim in a motion for a new trial or request for an evidentiary hearing in the trial court, our review is limited to mistakes apparent from the record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). As explained in *Heft*:

> A criminal defendant has the fundamental right to effective assistance of counsel. However, it is the defendant's burden to prove that counsel did not provide effective assistance. To prove that defense counsel was not effective, the defendant must show that (1) defense counsel's performance was so deficient that it fell below an objective standard of reasonableness and (2) there is a reasonable probability that defense counsel's deficient performance prejudiced the defendant. The defendant was prejudiced if, but for defense counsel's errors, the result of the proceeding would have been different. [*Id.* at 80-81 (citations omitted).]

"Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim." *People v Jackson (On Reconsideration)*, 313 Mich App 409, 432; 884 NW2d 297 (2015) (citation and quotation marks omitted). In cases where the defendant claims prejudice in having rejected a plea and standing trial, the defendant must establish that but for the ineffective advice of counsel, there is a reasonable probability that: (1) "the plea offer would have been presented

---

[4] Defendant's claim that by requiring him to testify, the trial court denied him his right to remain silent is neither preserved, as it was not raised below, *Aldrich*, 246 Mich App at 113, nor properly presented for review, as it is not identified as an issue in the statement of questions involved, MCR 7.212(C)(5); *People v Fonville*, 291 Mich App 363, 383; 804 NW2d 878 (2011). The issue is also abandoned because defendant fails to provide any meaningful analysis of the issue. *People v McDonald*, 303 Mich App 424, 439; 844 NW2d 168 (2013).

to the court (*i.e.,* that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances)," (2) "the court would have accepted its terms," and (3) "the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014).

Defendant claims that his attorney failed to advise him regarding the risks of proceeding to trial, including the sentence that he was likely to receive after a conviction at trial. There is no evidence on the record, however, regarding defense counsel's discussions with defendant.[5] Therefore, defendant fails to establish the factual predicate for his claim. See *Jackson*, 313 Mich App at 432. Moreover, defendant does not argue, let alone establish, that there is a reasonable probability that he would have accepted any plea that was offered. See *Douglas*, 496 Mich at 592. Rather, he argues that he would have accepted a more reasonable offer and that his attorney failed to seek and negotiate a better plea than the one that was offered.

At the final conference on January 26, 2016, defense counsel stated that he had talked to the prosecutor, who offered to allow defendant to plead guilty to second-degree murder and receive a minimum sentence at the bottom of the guidelines range, which was 22½ to 37½ years. Defendant indicated that he was not interested in the offer. At an evidentiary hearing on February 12, 2016, the prosecutor stated that the offer was for a plea to second-degree murder and a sentence within the guidelines range. The prosecutor stated that the offer would be open until the pretrial conference on February 22, 2016. At the pretrial conference on February 22, 2016, defense counsel stated that defendant was not interested in the offer for "the bottom end of the guidelines on a second [degree] murder case." The prosecutor stated that defense counsel was free to "have further negotiations upstairs." The trial court stated that it had given defendant more time to negotiate, but defense counsel stated that he had not yet gone to the superior's office at the prosecutor's office. At a second pretrial conference on April 5, 2016, defense counsel stated that the prosecutor was not coming down from 22 years. The prosecutor stated:

> My understanding is that's the offer so far. I don't have any other indication that says that counsel has spoken to anybody about a possible reduction to that. However, I don't know if that's possible at this point to reduce it too much further. But I always welcome counsel to speak to people that can make a decision on that.

The prosecutor stated that the person who could make such a decision was his supervisor. The prosecutor stated his understanding that the original offer was no longer available because the final conference had passed, and it was up to defense counsel to seek a new offer from the prosecutor's supervisor. Defense counsel stated that he would call the supervisor and defendant stated that he wanted him to do so.

---

[5] However, at a motion hearing on March 25, 2016, the prosecutor stated that if defendant were convicted, the sentence would be life imprisonment without the possibility of parole.

Defendant is incorrect in his conclusory argument that the parties agreed that defense counsel's performance was deficient as our review of the record fails to establish that defense counsel failed to attend any "pre-arranged appointments." It is true that the trial court and prosecutor encouraged defense counsel to contact the prosecutor's supervisor to seek a better offer and that defense counsel had not yet done so on April 5, 2016. But there is no indication in the record regarding whether defense counsel subsequently had contact with the prosecutor's supervisor. Although an agreement was apparently never reached, defendant has not shown that his counsel did not contact the supervisor. Without any record evidence of counsel's actions, or inactions, defendant fails to establish the factual predicate for his claim. See *Jackson*, 313 Mich App at 432. Even if defense counsel's failure to contact the supervisor further in advance of trial was unreasonable, defendant still fails to establish that a better offer would have been made by the supervisor. Defendant asks this Court to remand for a *Ginther*[6] hearing, but he fails to support his request with an affidavit or other offer of proof regarding the facts to be established at the hearing. MCR 7.211(C)(1). Therefore, remand is not warranted.

We affirm defendant's conviction, but vacate the trial court's scoring of OV 5 and remand to the trial court to make findings relative to the proper scoring of OV 5 in consideration of our Supreme Court's ruling in *Calloway* and the testimony presented during trial and at the sentencing hearing. We leave it to the sound judgement of the trial court whether it desires further testimony on the matter. We do not retain jurisdiction.

/s/ Stephen L. Borrello
/s/ William B. Murphy
/s/ Amy Ronayne Krause

---

[6] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).