*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ANTOINE LAMONT PATTERSON,

        Defendant-Appellant.

UNPUBLISHED
July 23, 2020

No. 345389
Kent Circuit Court
LC No. 17-005163-FC

Before: K. F. KELLY, P.J., and FORT HOOD and SWARTZLE, JJ.

PER CURIAM.

Defendant, Antoine Lamont Patterson, appeals as of right his jury-trial convictions. Defendant argues that the trial court erroneously admitted character evidence, his trial counsel rendered ineffective assistance, and the prosecutor committed error requiring reversal. Because defendant's arguments are without merit, we affirm.

## I. BACKGROUND

It is undisputed that defendant shot the victim during a verbal confrontation. The victim and defendant, who testified on his own behalf, presented very different versions of how the shooting occurred, but both men agreed that defendant shot the victim twice near the door of the victim's apartment. The victim testified that defendant brought the gun and that defendant shot him in the back as he turned away from the confrontation. In contrast, defendant testified that the victim produced a gun, dropped it during a struggle, and then defendant shot him in self-defense.

The victim, his girlfriend Leslie Haley, and his one-year-daughter lived on the second floor of an apartment building. The victim and his girlfriend frequently banged on their apartment ceiling at Paula Matthews, who lived directly above them. The victim claimed that he was in a feud with Matthews because she was noisy and could always be heard in the downstairs apartment.

One night, Matthews came home to her apartment with defendant. Because the victim heard Matthews and defendant in the upstairs apartment, he took a water bottle and threw it against the ceiling. After hearing the water bottle, defendant went downstairs and knocked on the victim's door. The victim opened his door, and defendant asked why he was making noise. The victim

-1-

told defendant about his feud with Matthews. At that point, defendant repeatedly asked the victim, "But why? But why?"

According to the victim, he then told defendant to "hold on" and went inside his apartment to put his shoes on so he could better defend himself. After he put his shoes on, he opened the door again. He told defendant, "Listen, you don't know me, I don't know you, get . . . out of my face, let's leave it at that." Defendant stopped responding to the victim, who turned around to go back inside his apartment. Defendant then shot the victim twice, once in his right flank and a second time in his left abdomen. The victim testified that he felt "heat" in his back and thought defendant shot him in the back. Dr. David Start, the forensic pathologist and medical examiner, testified that the victim was not shot in the back, but that the bullets exited through his back. Dr. Start stated it was reasonable to perceive the gunshot injury as occurring in the back because the victim would have experienced the most severe pain in his back.

In contrast, defendant testified that the victim went into his apartment after the initial confrontation and returned holding a gun in a now-gloved hand. Defendant testified that the victim struck him on the forehead with the gun, dropped the gun in the struggle, and then defendant shot him in self-defense with the victim's gun. During his closing argument, defense counsel argued that defendant acted in self-defense.

After the shooting, defendant fled the apartment complex. The victim called 911, and the police arrived to take the victim to the hospital for surgery. The police found and arrested defendant shortly after. Police discovered a pistol near a yard where they arrested defendant. The magazine in the pistol had a six-round capacity, but it contained only four .40-caliber Smith and Wesson Blazer bullets. When defendant learned the gun was found, he stated, "Man, I'm through." At trial, defendant admitted that he threw the gun out of the vehicle, and testified that he did so because he was afraid the police might shoot him if they saw him with a gun.

Police searched both apartments for evidence related to the shooting. In the victim's apartment, the police found a .38-caliber revolver registered to Haley. The victim had a felony record that prohibited him from living in a residence with a gun. Although the victim testified at the preliminary examination that he did not know about the revolver, he admitted at trial that he did know about the gun. Police also found two fired .40-caliber Blazer shell casings outside the apartment door and one of the two fired bullets inside the victim's apartment. Police did not find a glove at the scene. When police searched Matthews's apartment, they discovered a .38-caliber magazine with a .38-caliber handgun and a .40-caliber magazine, but no .40-caliber handgun.

Michelle Schmitt, a DNA analyst for the Michigan State Police, testified that defendant's DNA matched one of three DNA profiles found on the gun used in the shooting. The victim, however, was excluded as a possible contributor of DNA found on the gun. Additionally, after defendant's arrest, he was taken to Kent County Jail where Phyllis Fix, an intake nurse, examined him. Although defendant testified the victim struck him in the head with a gun, Fix testified that defendant had no observable injuries and that he denied experiencing any life-threatening event that was bothering him at that time.

In Detective Bill Marks's initial police report about the night of the shooting, he stated that the victim hit his ceiling with a broom, but at trial he clarified that the victim never said he used a

broom. Detective Marks testified that Haley was the one who told him that she would hit the ceiling with a broom. Detective Marks clarified that he used his own words to summarize the conversation he had with the victim.

At trial, witnesses testified about a prior incident involving defendant. Robert Toscano, owner of a bar called Julian's, testified about an issue between Moreno Marte and defendant in 2007. Toscano testified that the incident started when Marte accused defendant of staring at him. Marte did not realize defendant was staring at the television behind him. Jodie Warning, an employee of Julian's, began escorting Marte to the door, but defendant met them in the hallway before they could exit. Warning testified that defendant knocked her to the ground, and then shot Marte several times. Warning testified that she did not see Marte with any weapon. Toscano testified that defendant opened the door and fled the scene. During the current trial, defendant admitted that he shot Marte in 2007, but he claimed that he did so in self-defense. Additionally, he testified that he left Julian's after he shot Marte because he was not allowed to possess guns in 2007 and did not want to get in trouble.

During his closing argument, the prosecutor argued that defendant did not shoot the victim in self-defense because "[t]he defendant shot somebody in 2007 and cavalierly talk[ed] about how he shot the person in 2007 and allege[d] self-defense, when nobody has heard about it before." The trial court told the jury that it could only consider whether the evidence regarding the 2007 shooting tended to prove in this case "[t]hat the defendant acted purposefully, that it is, not by accident or mistake, or that because he misjudged the situation; and whether the defendant held an honest belief that he needed to use deadly force in self-defense."

At trial, defense counsel did not call two witnesses who defendant now claims would have provided favorable testimony that would have purportedly changed the outcome of his trial. Furthermore, defense counsel did not call as witnesses previous residents in the victim's apartment building, police officers who responded to alleged instances of domestic violence in the victim's apartment, or a firearms expert.

At trial, the prosecutor questioned Matthews about defendant's history of gun use and whether defendant's statements during a telephone call from jail were a coded reference to destroying evidence. Matthews testified that defendant asked her to get rid of "coffee and coffee creamer," but denied the phrase was code for something else. Finally, the prosecutor's closing argument emphasized the truthfulness of the victim's testimony despite the fact that the victim had lied in the preliminary examination about not knowing of Haley's gun in the apartment. The prosecutor did, however, mention in his closing argument that the victim initially lied about the gun.

The jury convicted defendant of assault with intent to do great bodily harm less than murder, MCL 750.84; felon in possession of a firearm (felon-in-possession), MCL 750.224f; possession of a firearm during the commission of a felony, MCL 750.227b; and carrying a concealed weapon, MCL 750.227. The trial court sentenced defendant to serve concurrent prison terms of 25 to 50 years for the convictions of assault, felon-in-possession, and carrying a concealed weapon, consecutive to a term of two years in prison for the felony-firearm conviction. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, for the offenses of assault, felon-in-possession, and carrying a concealed weapon.

Defendant appeals as of right from his convictions.

## II.  ANALYSIS

### A.  OTHER-ACTS EVIDENCE

Defendant first argues that the trial court abused its discretion by permitting the prosecutor to admit evidence of defendant's involvement in a 2007 shooting.  Assuming without deciding that the evidence was improperly admitted, we nonetheless conclude that any potential issue with the admission of the evidence was harmless because the prosecutor presented the jury with overwhelming evidence of defendant's guilt.

The improper admission of evidence justifies reversal only if it is more probable than not that it determined the outcome of the case.  *People v Lukity*, 460 Mich 484, 493-496; 596 NW2d 607 (1999).  An error is outcome determinative if it undermines the reliability of the verdict in light of the untainted evidence.  *People v Whittaker*, 465 Mich 422, 427; 635 NW2d 687 (2001).

Here, the prosecutor presented significant admissible evidence that allowed the jury to conclude that defendant brought the gun to the victim's apartment and that defendant did not use it in self-defense.  Defendant admitted that he shot the victim.  Defendant's DNA, not the victim's DNA, was found on the gun.  Although defendant claimed that the victim's DNA was not discovered because the victim was wearing a glove while holding the gun, police did not recover a glove from the scene of the shooting.  Furthermore, ammunition for the gun defendant used was found in his girlfriend's apartment, while a different gun with different ammunition was found in the victim's apartment. Finally, the nurse who examined defendant at the jail testified that he had no visible injuries, despite defendant's claim that the victim struck him in the head with the gun.  Given this highly damaging evidence, the potentially improper admission of defendant's involvement in a 2007 shooting at a bar was harmless.

### B.  INEFFECTIVE ASSISTANCE OF COUNSEL

Next, defendant argues that he was denied effective assistance of counsel because defense counsel failed to introduce evidence of the victim's violent character.  We conclude that defendant's argument is without merit.

Because no *Ginther* hearing occurred, we limit our review to mistakes apparent on the record.  *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).  The defendant has the burden of establishing that he was denied effective assistance of counsel.  *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).  The defendant must show that trial counsel's performance was objectively deficient, and that the deficiencies prejudiced the defendant.  *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018).

For the first requirement, the defendant "must overcome the strong presumption that counsel's performance was born from a sound trial strategy."  *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012).  A defense counsel's failure to investigate a defendant's case "is ineffective assistance of counsel if it undermines confidence in the trial's outcome."  *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012) (cleaned up).  Moreover, defense

counsel's failure to present evidence or call witnesses at trial can constitute ineffective assistance of counsel if the defendant is deprived of a substantial defense. *People v Dunigan*, 299 Mich App 579, 589; 831 NW2d 243 (2013); *Russell*, 297 Mich App at 716. Unless deprived of a substantial defense, however, these types of decisions are matters of trial strategy. *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008).

For the second requirement, the defendant "must show that, but for counsel's deficient performance, a different result would have been reasonably probable." *People v Armstrong*, 490 Mich 281, 290; 806 NW2d 676 (2011). "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

### 1. VICTIM-CHARACTER EVIDENCE UNDER MRE 404(a)(2)

Defendant argues that he was denied effective assistance of counsel because defense counsel failed to admit evidence of the victim's aggressive behavior under MRE 404(a)(2). This argument is without merit because MRE 404(a)(2) is not applicable in this case.

Specifically, MRE 404(a)(2) provides an exception to the general rule that character evidence is not admissible except:

> When self-defense is an issue in *a charge of homicide*, evidence of a trait of character for aggression of the alleged victim of the crime offered by an accused, or evidence offered by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the alleged victim offered by the prosecution in a charge of homicide to rebut evidence that the alleged victim was the first aggressor. [Emphasis added.]

This case does not involve "a charge of homicide" because the victim survived the shooting. Accordingly, any claim of ineffective assistance of counsel premised on the rule necessarily fails.

### 2. VICTIM-CHARACTER EVIDENCE UNDER MRE 405(b)

Defendant also argues that that he was denied effective assistance of counsel because defense counsel failed to introduce evidence that the victim was the initial aggressor. MRE 405(b) provides: "In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of that person's conduct."

As evident from the language of the rule, MRE 405 "allows specific instances of violence to be admitted only when character or a trait of character is made an essential element of a claim, charge, or defense." *People v Harris*, 458 Mich 310, 319; 583 NW2d 680 (1998). Our Supreme Court has held that MRE 405(b) prohibits defendants from using specific instances to show that the victim was the initial aggressor in a dispute. *Id.* Defense counsel was not permitted to provide the jury with specific instances of the victim's conduct to prove that the victim was the initial aggressor, and defendant has not pointed to any element of a claim, charge, or defense under which such evidence would have been admissible. Failing to advance a meritless argument or objection does not amount to ineffective assistance of counsel. See *Ericksen*, 288 Mich App at 201.

## 3. FAILURE TO PRODUCE WITNESSES

Defendant also argues in his Standard 4 brief that he was denied effective assistance of counsel because his counsel failed to produce certain witnesses. All of the claims lack merit.

First, defendant argues that he was denied effective assistance of counsel because defense counsel failed to call Shaniece Brown and Charles Bridgeford as witnesses at trial. Defendant supports his argument by attaching a police report to his Standard 4 brief. In the report, Brown told the police that she heard a loud rumbling and screaming in the hallway of the apartment building during the dispute between the victim and defendant. Bridgeford told the police that he heard a fight around 4:30 p.m. the day of the shooting in the victim's apartment and that it "was more intense that [sic] what he normally hears in the upstairs apartment." Defendant claims that testimony from Brown and Bridgeford would have supported his argument that he shot the victim in self-defense.

Defendant's argument amounts to mere speculation. First, the police report defendant attached to his brief is not part of the trial-court record, and this Court may not expand the record on appeal. See MCR 7.210(A). Defendant never requested an evidentiary hearing to admit the police report into the record. Additionally, the police report only provides this Court with speculation about what testimony Brown and Bridgeford would have offered at trial, and that it would have been favorable to defendant. See *Payne*, 285 Mich App at 190. Defendant also failed to provide proof that either Bridgeford or Brown were available for trial. *Id*. Finally, defendant states that Brown's and Bridgeford's testimony would have rebutted the prosecutor's claim that the victim was not aggressive, but defendant does not establish that this type of testimony would have been admissible at trial. Because the trial-court record does not support defendant's argument, there is no mistake apparent in the record. See *Payne*, 285 Mich App at 189.

Additionally, defendant failed to establish that he was prejudiced. Even if Brown would have testified at trial that she heard a loud rumbling and the jury found Brown's testimony consistent with what defendant claimed happened in the hallway, the prosecutor still presented the jury with sufficient evidence to support the victim's version of events. As stated above, the DNA evidence and the discovery of ammunition supported the prosecutor's argument that defendant, not the victim, brought the gun to the altercation. Furthermore, defendant had no injuries recorded from his jail-intake examination even though he testified the victim struck him in the forehead with the gun. Additionally, although defendant claims that Bridgeford could have established that the victim was normally aggressive, the prosecutor presented the jury with testimony from several other witnesses who lived in same apartment complex, attesting that they never had any issues with the victim and that they knew him as a family man. It is unlikely that the testimony of Bridgeford would have changed the outcome of the trial. See *Armstrong*, 490 Mich at 290. Therefore, we conclude that defense counsel's performance was not objectively deficient nor did it prejudice defendant. See *Randolph*, 502 Mich at 9.

As for his second claim, defendant argues that he was denied effective assistance of counsel because defense counsel failed to contact or produce the residents who lived in the upstairs apartment before Matthews. Defendant also argues that defense counsel failed to contact the police officers who responded to domestic-violence incidents at the victim's apartment. Defendant

-6-

argues that defense counsel should have called those individuals because they would have provided testimony favorable to him at trial.

In support of his argument, defendant provided this Court with an e-mail that Detective Andrew Hinds received from the property manager of the apartment complex. In the e-mail, the property manager stated that he had notes in the victim's apartment file about the victim showing intimidating behavior toward the people who used to live in the upstairs apartment and that there were "a few domestics over the past few years" in the apartment where the victim lived.

Defense counsel's performance was not objectively deficient for failing to call the previous residents of Matthews's apartment or the police officers who responded to the "few domestics." The e-mail that defendant referred to is not part of the trial-court record, and this Court may not expand the record on appeal. See MCR 7.210(A). Defendant never requested an evidentiary hearing so that he could enter evidence to support his claim in the record. Additionally, the e-mail only provides this Court with speculation that defense counsel could have found the previous residents and that they would have testified favorably for defendant. See *Payne*, 285 Mich App at 189. Defendant did not attach an affidavit from the previous residents containing the statements the residents would have made at trial. See *id.* Defendant cannot even provide the names of the previous residents. The same is true regarding the police officers that defendant claims defense counsel should have called to testify at trial. See *id.* Furthermore, defendant failed to establish whether or how such testimony from the previous residents or the police officers would have even been admissible at trial. Therefore, defendant failed to demonstrate that defense counsel's performance was objectively deficient. See *Hoag*, 460 Mich at 6.

Even if we assumed defense counsel's performance was objectively deficient, defendant failed to prove that he was prejudiced. The prosecutor presented the jury with an overwhelming amount of evidence that tended to establish defendant's guilt. The majority of evidence at trial also disproved defendant's claim that the victim hit him with the gun and that he shot the victim in self-defense. Therefore, defendant did not meet his burden. See *Hoag*, 460 Mich at 6.

Finally, defendant argues that he was denied effective assistance of counsel because defense counsel failed to call a firearms expert. Defendant claims that the gun he used to shoot the victim used a "6 shot clip," and the magazine found in Matthews's "apartment was a 10 shot 40 caliber clip." Yet, he fails to provide any evidence that the magazine found in Matthews's apartment "was a 10 shot 40 caliber clip." This alleged fact is not provided in the trial-court record, and defendant never requested an evidentiary hearing for the admission of that evidence. Additionally, defendant did not present this Court with any affidavit from any expert witness who would have testified on his behalf. See *Payne*, 285 Mich App at 189. Because the trial-court record does not support defendant's argument, there is no mistake apparent in the record. See *id.*

## 4. RIGHT TO CONFRONTATION

Defendant next argues that he was denied his right to effective assistance of counsel because defense counsel failed to object to the trial testimony of Dr. Start, the forensic pathologist and medical examiner. At trial, Dr. Start testified that he reviewed the victim's ER, CT, and surgical records and then he testified about the injuries the victim sustained from the shooting.

Because the surgeon who operated on the victim did not testify, defendant claims that the prosecutor violated his right to confrontation. Defendant's argument is without merit.

The Confrontation Clauses of the United States Constitution and Michigan's 1963 Constitution grant defendants the right to confront witnesses against them. US Const, Am VI; Const 1963, art 1, § 20. The Confrontation Clauses prohibit "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Crawford v Washington*, 541 US 36, 53-54, 124 S Ct 1354, 158 L Ed 2d 177 (2004); see also *People v Spangler*, 285 Mich App 136, 142; 774 NW2d 702 (2009). Statements are generally considered testimonial when there is no ongoing emergency, and the primary purpose of the statements is for a later criminal prosecution. *Davis v Washington*, 547 US 813, 822, 126 S Ct 2266, 165 L Ed 2d 224 (2006).

There is no indication that the medical records about which Dr. Start testified were testimonial because there is no indication that they were prepared in anticipation of litigation against defendant. See *People v Jambor (On Remand)*, 273 Mich App 477, 483-484, 487; 729 NW2d 569 (2007). The trial-court record only indicates that the records were prepared for the purpose of treating the victim during a medical emergency. Additionally, defendant has the burden of proving that the victim's surgeon was available to testify, but he failed to do so. See *Randolph*, 502 Mich at 9.

Even assuming that defense counsel was objectively deficient for not objecting to Dr. Start's testimony, defendant was not prejudiced. Dr. Start's testimony simply established that defendant was shot twice and that he needed surgery to address the wounds. At trial, defendant admitted that he shot the victim twice. Additionally, the victim testified that defendant shot him twice and that after he was shot the second time, he could not walk. The victim also testified that he was bleeding excessively and was taken to the hospital for surgery. Furthermore, Dr. Start's testimony supported defendant's testimony about what occurred in the hallway because Dr. Start testified that based on both wound trajectories, the victim was either facing the gun when he was shot or a portion of his body was facing the gun. The victim indicated at trial that he had his back to defendant when he was shot. Therefore, defendant failed to establish that defense counsel's performance was objectively deficient or that it prejudiced him. See *id*.

## C. PROSECUTORIAL ERROR

Finally, defendant argues in his Standard 4 brief that he was denied a fair trial because the prosecutor committed error on several occasions. Initially, we note that under this Court's jurisprudence, this is not a claim of "prosecutorial misconduct" (i.e., extreme or illegal conduct), but rather one of "prosecutorial error." See *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015). The test for prosecutorial error is whether the prosecutor committed error that "deprived defendant of a fair and impartial trial." *Id*. at 88.

Defendant did not object or request a curative instruction for any of the claimed instances of prosecutorial error. Therefore, these claims are not preserved for appeal, and we review them only for plain error. *People v Watson*, 245 Mich App 572, 586; 629 NW2d 411 (2001). A defendant must meet the following three requirements to establish plain error: "1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial

rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Additionally, even if the "defendant satisfies the three requirements, an appellate court must exercise its discretion in deciding whether to reverse" because "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *Id*. at 763-764 (cleaned up).

Various errors could support a new trial. The prosecutor has a duty to correct the false testimony of one of its witnesses, and a defendant is entitled to a new trial if it is reasonably likely that false testimony affected the jury's judgment. *People v Smith*, 498 Mich 466, 476; 870 NW2d 299 (2015). The prosecutor also commits error if he makes improper arguments or statements at trial. See *Unger*, 278 Mich App at 235-237. A prosecutor's statement must be "evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial to determine whether a defendant was denied a fair and impartial trial." *People v Brown*, 267 Mich App 141, 152; 703 NW2d 230 (2005). In general, prosecutors have "great latitude regarding their arguments and conduct." *People v Bahoda*, 448 Mich 261, 282; 531 NW 2d 659 (1995) (cleaned up). A finding of prosecutorial error "may not be based on a prosecutor's good-faith effort to admit evidence." *People v Dobek*, 274 Mich App 58, 76; 732 NW2d 546 (2007).

### 1. FALSE TESTIMONY FROM THE VICTIM

Defendant first argues that the prosecutor erred because he permitted the victim to lie under oath at trial. Specifically, defendant points to the victim's testimony about how he was shot. Defendant notes that the first few times the victim told the police what happened between him and defendant, the victim simply stated that he opened his door and was shot. The victim never mentioned that he went inside to put his shoes on while talking to defendant.

There is nothing improper when a prosecutor elicits testimony at trial that is merely more extensive than prior testimony or recitations of events, especially when the trial testimony provides context to the events. When the victim explained that he returned to the apartment to put shoes on, he was doing nothing more than supplying context, and the prosecutor did not err in eliciting this testimony.

Defendant also argues that the prosecutor erred because he repeatedly allowed the victim to testify that he was shot in the back. At trial, the victim testified on direct examination that after facing defendant, he turned around to enter his apartment when he felt "heat" in his back. He also testified that at the time he was shot, he was not sure where he was shot, but he testified that he felt pain in his back. On cross-examination, the victim agreed with defense counsel that defendant first shot him in the back. The victim claiming that he was shot in the back was consistent with his version of what happened in the hallway but inconsistent with what defendant stated occurred in the hallway.

The prosecutor also called Dr. Start to testify at trial. Dr. Start clarified for the jury that the victim had one wound with an entry hole near his right flank and an exit hole near the top of his right buttock. Dr. Start also testified that the entry point of the second wound was on the left side of the victim's abdomen, and the exit was on the right side of the spine. Dr. Start explained to the jury that the victim might have thought that he was shot in the back because the injuries to the victim's back were more noticeable than the injuries to his abdomen. Defendant's wounds

went through his back, and the injuries in his back were more painful. Furthermore, Dr. Start testified that based on the victim's wounds, the victim might not have been completely facing defendant when he was shot the first time. Therefore, the prosecutor did not commit error. Recognizing that the victim testified that he was shot in his back, the prosecutor corrected and clarified the victim's testimony. See *Smith*, 498 Mich at 475.

Defendant also argues that he was denied a fair trial because the prosecutor permitted the victim to testify at the preliminary examination that he did not know that there was a gun in his apartment. Defendant, however, failed to establish that the prosecutor knew at that time that the victim was not truthful when he made that statement. *Id.* Additionally, at trial, the victim testified that he did know that there was gun in his apartment at the time defendant shot him, and he testified that he initially lied about knowing that there was a gun in the apartment. Because the jury was fully aware that the victim knew that there was a gun in his apartment and that the victim initially lied about this fact, defendant did not suffer any prejudice. *Id*. at 476.

Defendant also argues that the prosecutor permitted Detective Marks to provide the jury with false testimony at trial to support the victim's false testimony. Defendant's accusation is without merit and mischaracterizes Detective Marks's testimony.

At trial, the prosecutor reviewed with Detective Marks the police report that the detective made after initially interviewing the victim. Detective Marks clarified that although he stated in his report that the victim hit his ceiling with a broom the night of the incident, he realized that the victim never said he hit the ceiling with a broom. Detective Marks testified that he realized Haley was the one who told him that she would hit the ceiling with a broom. Additionally, at trial, Detective Marks clarified that he used some of his own words to summarize the conversation he had with the victim. He did not always use the exact language of the victim. There is no evidence in the record that Detective Marks intentionally misled the jury or that the prosecutor elicited misleading testimony from the detective. The claim is meritless.

Defendant next argues that the prosecutor erred because he allowed Haley to testify at trial that the victim was not aggressive, and defendant contends that Haley knew that the victim was aggressive. In support, defendant relies on the e-mail about "a few domestics." But, as previously discussed, his claim is unsupported and speculative, and we reject it.

## 2. CROSS-EXAMINATION

Defendant also contends that the prosecutor improperly cross-examined Matthews and defendant at trial about his previous gun use. Defendant first notes that the prosecutor asked Matthews whether she knew about defendant's history of gun use. Defendant claims that this was improper, and in fact, at trial, defense counsel objected to this question. The trial court sustained defense counsel's objection. Even though the trial court determined that the prosecutor's question was improper, defendant failed to establish that the prosecutor's effort to admit that evidence was not in good faith. See *Dobek*, 274 Mich App at 76. Therefore, defendant failed to establish the prosecutor erred.

Defendant further argues that the prosecutor erred when he inquired into the 2007 shooting because this amounted to improper character evidence under MRE 404(b). Assuming that

evidence of the 2007 shooting was inadmissible, to prove prosecutorial error, defendant had to prove that the prosecutor did not ask questions regarding the 2007 shooting in good faith. Yet, defendant failed to argue or prove that the prosecutor did not ask questions regarding the shooting in good faith. See *id*. Therefore, this argument is also without merit.

Defendant next contends that the prosecutor improperly questioned Matthews about defendant's statements to her about coffee and coffee creamer. At trial, Matthews testified that defendant asked her to get rid of the coffee and creamer he had at his apartment while he was in jail. When the prosecutor asked Matthews if "coffee and creamer" was code for evidence, Matthews denied that it was code. Although defendant claims that this question amounts to prosecutorial error, defendant failed to establish that this question was not asked in good faith. Instead, defendant merely contended that the evidence was irrelevant.

Defendant also argues the prosecutor improperly asked him about being a felon and being permitted to carry a gun. Defendant claims that this question was improper and prejudiced him. At trial, however, defense counsel and the prosecutor stipulated to the fact that defendant had been convicted of a felony that prohibited him from possessing guns. This stipulation was relevant to defendant's felon-in-possession charge. In fact, the jury instructions to which the parties stipulated stated that defendant was "convicted of a felony that disqualifies him from possessing a weapon." The stipulation established defendant's status as a felon who could not possess guns, and the prosecutor did not discuss anything related to defendant's felony conviction that was outside the stipulation. Therefore, defendant failed to establish that he was denied a fair trial.

## 3. CLOSING ARGUMENT

Finally, defendant argues that the prosecutor improperly argued in his closing argument that the victim was honest throughout the duration of this case. Defendant correctly notes that in his closing argument, the prosecutor emphasized how honest the victim had been with the jury. Defendant fails to note, however, that the prosecutor mentioned that the victim previously lied about knowing whether there was a gun in his apartment. Therefore, it was not improper for the prosecutor to argue that even though the victim was honest at trial, he was not always honest throughout the course of this case. Defendant claims that the only reason the victim was truthful about knowing that there was a gun in the apartment was because the prosecutor agreed not to charge him with perjury or felon-in-possession. Defendant, however, provides no support for this contention.

Even if the statements the prosecutor made in his closing argument were improper, defendant failed to prove that he was prejudiced. The trial court properly instructed the jury that the arguments that the prosecutor and defense counsel made in their closing arguments were not evidence that the jury could consider in reaching its verdict, and jurors are presumed to follow the trial court's instructions. See *id*. Defendant was not denied a fair trial.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Karen M. Fort Hood
/s/ Brock A. Swartzle

-11-