*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
February 11, 2021

Plaintiff-Appellee,

v

No. 350616
Wayne Circuit Court
LC No. 19-001723-01-FC

LAMAR LORENZO MCKAY,

Defendant-Appellant.

Before: FORT HOOD, P.J., and GADOLA and LETICA, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of first-degree murder, MCL 750.316(a); possession of a firearm by a convicted felon (felon-in-possession), MCL 750.224f; and two counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b(1). Defendant was sentenced, as a fourth-offense habitual offender, MCL 769.12, to life in prison without the opportunity for parole for his first-degree murder conviction, 2 to 20 years' imprisonment for felon-in-possession, and two years' imprisonment for his felony-firearm convictions. On appeal, defendant argues that there was insufficient evidence to sustain his first-degree murder conviction, and that he was denied the effective assistance of counsel. We disagree and affirm.

## I. FACTUAL BACKGROUND

This case arises from a shooting incident that resulted in the death of the victim. Edward Fuller was at a house with defendant and two other men. A few hours before the incident, Fuller heard defendant talking about the victim, stating "[h]e wasn't taking no more a** whoopings from [the victim]." Defendant indicated that the victim owed him money, and that defendant had tried calling the victim that day, presumably to collect the money owed, but the victim did not answer his phone. That evening, while Fuller was in one of the back bedrooms of the house and defendant was in the kitchen, Fuller heard the doorbell ring followed by a loud boom.

Fuller went to the front door and saw defendant, with a shotgun in his hand, chasing the victim toward the victim's vehicle that was parked near the street. Fuller followed defendant and the victim out to the street. Fuller then witnessed defendant shoot the victim as the victim ran

-1-

away, at close range, causing the victim to fall down onto the street. Defendant threw the shotgun on the ground, but when Fuller started to approach defendant, defendant picked the shotgun back up and pointed it at Fuller, causing Fuller to run back to the house. As Fuller ran, he saw defendant hit the victim with the butt of the shotgun and then search the victim's pocket. Inside the house, Fuller locked the door and called the police.

When the police arrived, Detroit Police Officer Joevarka Tyus witnessed the victim's body lying on the ground with multiple gunshot wounds and one of his pant pockets turned out. The officers recovered a handle from a shotgun near the victim's body, which was found to contain the DNA of both defendant and Fuller. Detroit Police Officer Eric Smith saw footprints in the snow in the rear of the house. Following the footprints, Officer Smith found a cap to a shotgun magazine tube, a wooden foregrip from a shotgun, a 12-gauge shotgun shell, and some of the victim's personal belongings in the snow. These items were not tested for DNA evidence because they were covered in snow and wet and, as a result, purportedly had no evidentiary value. Detroit Police Sergeant Steven Ford obtained video surveillance from the night of the incident from two nearby locations. One of the videos showed a "young man walking down the street with the gun" about the time of the incident.

Defendant was ultimately arrested, charged, and convicted as noted above. He now appeals.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant first argues there was insufficient evidence to support his first-degree murder conviction. We disagree.

"A challenge to the sufficiency of the evidence in a jury trial is reviewed de novo, viewing the evidence in the light most favorable to the prosecution, to determine whether the trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Gaines*, 306 Mich App 289, 296; 856 NW2d 222 (2014). This Court "must defer to the fact-finder by drawing all reasonable inferences and resolving credibility conflicts in support of the jury verdict." *People v Schumacher*, 276 Mich App 165, 167; 740 NW2d 534 (2007). Likewise, the trial court's decision regarding a motion for a directed verdict is reviewed de novo, except that the trial court only considers evidence presented up to the time of the motion. *People v Powell*, 278 Mich App 318, 320 n 1; 750 NW2d 607 (2008).

"Due process requires that the evidence show guilt beyond a reasonable doubt in order to sustain a conviction." *People v Unger*, 278 Mich App 210, 222; 749 NW2d 272 (2008). To establish first-degree murder, "the prosecution must establish beyond a reasonable doubt a '[m]urder perpetrated by means of poison, lying in wait, or any other willful, deliberate, and premeditated killing.' " *People v Oros*, 502 Mich 229, 240; 917 NW2d 559 (2018), quoting MCL 750.316(1)(a). The essential elements required to prove first-degree murder are: "(1) the intentional killing of a human (2) with premeditation and deliberation." *Id.* (quotation marks and citation omitted). "First-degree premeditated murder is only distinguished from second-degree murder by the element of premeditation." *People v Walker*, 330 Mich App 378, 383; 948 NW2d 122 (2019). "[T]o premeditate is to think about beforehand; to deliberate is to measure and

evaluate the major facets of a choice or problem." *Oros*, 502 Mich at 240 (quotation marks and citation omitted).

"Premeditation may be established through evidence of (1) the prior relationship of the parties, (2) the defendant's actions before the killing, (3) the circumstances of the killing itself, and (4) the defendant's conduct after the homicide." *Walker*, 330 Mich App at 384 (quotation marks and citation omitted). "Premeditation cannot be found where a defendant acts on a sudden impulse[,]" but "may be established by circumstantial evidence tending to show that a defendant had an opportunity to think about, evaluate, or take a second look at their actions." *Id*. at 383 (quotation marks and citations omitted). "That is, some time span between the initial homicidal intent and ultimate action is necessary to establish premeditation and deliberation, but it is within the province of the fact-finder to determine whether there was sufficient time for a reasonable person to subject his or her action to a second look." *Oros*, 502 Mich at 242. In addition, "[b]y the weight of authority the deliberation essential to establish murder in the first degree need not have existed for any particular length of time before the killing." *Id*. at 243 (quotation marks and citation omitted).

Defendant argues the prosecution failed to provide sufficient evidence for his first-degree murder conviction because there was no evidence of premeditation or deliberation. To support his argument, defendant points to the instantaneous shooting of the victim after defendant rang the doorbell, and the lack of any serious altercation between defendant and the victim. We disagree.

The evidence showed that defendant and the victim had a preexisting relationship wherein the victim purportedly owed money to defendant. On the day of the incident, evidence suggests that defendant tried calling the victim several times to collect money from the victim, stating he would take "no more a** whoopings from [the victim]." Shortly thereafter, the victim rang the doorbell and was immediately shot by defendant. Defendant suggests that shooting the victim after the victim rang the doorbell was not premediated because it was an instantaneous action. This argument is confusing. There is no indication that defendant acted "on a sudden impulse," nor is there any evidence that defendant was triggered by any immediate or imminent fear of the victim. See *Walker*, 330 Mich App at 383 (quotation marks and citation omitted). Moreover, the argument completely ignores the fact that defendant chose to chase the victim into the street and fire his shotgun at the victim a second time. Even assuming arguendo that the first shot lacked the requisite intent, defendant had ample time between the first and second shots to evaluate his actions.

Defendant also suggests that premeditation and deliberation were not established because of Fuller's lack of credibility. Specifically, Fuller admitted that on the day of the incident he had taken illegal drugs, including crack and heroin, although he did not believe it affected his ability to perceive or his memory of the incident. While a witness's use of drugs on the day of the offense is relevant to his ability to perceive and recall the events that transpired and his credibility, *People v Hill*, 282 Mich App 538, 541; 766 NW2d 17 (2009), vacated in part 485 Mich 912 (2009), Fuller has consistently stated that defendant shot the victim and his recollection of the incident has not substantially varied. Further, as has long been recognized "[q]uestions regarding the weight of the evidence and credibility of witnesses are for the jury, and this Court must not interfere with that role even when reviewing the sufficiency of the evidence." *People v Carll*, 322 Mich App 690, 696; 915 NW2d 387 (2018). Because the jury chose to resolve the allegedly conflicting evidence

in favor of the prosecution, we conclude the jury found Fuller to be a credible witness for purposes of determining whether defendant engaged in premeditation and deliberation to murder the victim.[1]

With all of the above in mind, we conclude that sufficient evidence was presented to establish defendant's guilt.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next argues that he was denied effective assistance of counsel because his counsel failed to refer defendant for a mental status evaluation, failed to present evidence of the victim's criminal record at trial, and failed to have all of the items recovered by the police tested for DNA evidence. We disagree.

A claim of ineffective assistance of counsel must be raised below in a motion for a new trial or an evidentiary hearing under *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973). *People v Snider*, 239 Mich App 393, 423; 608 NW2d 502 (2000). Defendant first raised the issue of ineffective assistance of counsel in his brief on appeal. The issue is therefore unpreserved. Generally, the determination of whether a defendant has been deprived of the effective assistance of counsel presents a mixed question of fact and law. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). The trial court's factual findings are reviewed for clear error, while its constitutional determinations are reviewed de novo. *Id.* Because defendant's claim of ineffective assistance of counsel is unpreserved, this Court's "review is limited to errors apparent on the record." *Unger*, 278 Mich App at 253.

To establish ineffective assistance of counsel, defendant must show that counsel's performance fell below an objective standard of reasonableness, and that the representation so prejudiced defendant that he was denied the right to a fair trial. *People v Pickens*, 446 Mich 298, 338; 521 NW2d 797 (1994). To establish prejudice, defendant must show a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *People v Johnson*, 451 Mich 115, 124; 545 NW2d 637 (1996). Defendant must overcome the strong presumption that counsel's actions constituted sound trial strategy under the circumstances. *People v Toma*, 462 Mich 281, 302; 613 NW2d 694 (2000). Additionally, effective assistance of counsel is presumed and defendant bears a heavy burden to prove otherwise. *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999).

Defendant first argues that trial counsel failed to refer defendant for a mental status evaluation, denying defendant the opportunity to present a complete defense at trial. The decision to pursue a particular defense is a matter of trial strategy, and trial counsel is not required to concoct a defense when none exists. *People v Buie*, 298 Mich App 50, 66; 825 NW2d 361 (2012). "The role of defense counsel is to choose the best defense for the defendant under the circumstances." *Pickens*, 446 Mich at 325. Defendant has not provided any evidence demonstrating that trial counsel should have pursued a mental status evaluation to assert some type of mental illness

---

[1] We also note that defendant's flight from the scene supports "an inference of consciousness of guilt[.]" *Unger*, 278 Mich App at 226.

defense. In fact, defendant has not presented any evidence that he has any history of mental illness at all. Instead, defendant merely concludes that, on the basis of his having acted "out of rage or anger," a mental status evaluation was necessary. This is inadequate. There is no evidence in the record that a mental evaluation would have shown that defendant was legally insane or otherwise less culpable for the victim's murder. As a result, defendant cannot show that his trial counsel's failure to procure a mental status evaluation was erroneous in the first instance, let alone that it denied defendant a fair trial.

Next, defendant briefly argues that trial counsel failed to present evidence of the victim's criminal record at trial despite having knowledge of evidence that suggested defendant's aggressive actions were in response to his fear of the victim's violent tendencies. To support his argument, defendant points to his statement to Fuller, on the day of the incident, that defendant "wasn't taking no more a\*\* whoopings from [the victim]." However, defendant has provided minimal information concerning the victim's purported violent criminal record to support defendant's self-defense argument.[2] "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). Defendant's failure to provide any analysis or authority in support of his self-defense claim renders it abandoned. *People v Harris*, 261 Mich App 44, 50; 680 NW2d 17 (2004).[3]

---

[2] Defendant notes that the victim previously pleaded guilty in another case to careless discharge of a firearm causing injury or death, and that the victim is thus "no stranger to violence." The crime to which defendant refers is proscribed by MCL 752.861, which provides in relevant part:

> Any person who, because of carelessness, recklessness or negligence, but not willfully or wantonly, shall cause or allow any firearm under his immediate control, to be discharged so as to kill or injure another person, shall be guilty of a misdemeanor . . . .

Defendant fails to explain how a guilty plea to the crime proscribed by MCL 752.861 in another case supports the notion that defendant was acting in self-defense in this case.

[3] We also note that this issue lacks merit because evidence of the victim's criminal record would not have been admissible at trial. A defendant may present evidence that a victim had a trait of character for aggression when self-defense is an issue in a charge involving homicide. MRE 404(a)(2). However, "the character of the victim may not be shown by specific instances of conduct unless those instances are independently admissible to show some matter apart from character as circumstantial evidence of the conduct of the victim on a particular occasion." *People v Harris*, 458 Mich 310, 319; 583 NW2d 680 (1998). As a result, a defendant cannot "use specific instances to show that the victim was the aggressor since the aggressive character of the victim is not an essential element of the defense of self-defense[.]" *Id*.

Moreover, even if the victim's aggressive character was essential to defendant's self-defense claim, the record shows that defendant was the initial aggressor. To assert a self-defense

Defendant lastly argues that trial counsel failed to have all of the items recovered by the police tested for DNA evidence. During their investigation, the police recovered multiple pieces of a shotgun near scene. However, because of the winter conditions, it was opined that the snow destroyed any potential evidentiary value on all but one of the pieces, i.e., the shotgun handle, which was tested and revealed defendant's DNA was present. In addition to defense counsel's belief that the items did not have evidentiary value, defense counsel might also have strategically declined to have the items tested for fear that they would have revealed further inculpatory DNA evidence. See *People v Bass*, 317 Mich App 241, 278; 893 NW2d 140 (2016) (noting that we do not substitute our judgment for that of counsel on matters of trial strategy). After all, defendant's DNA was found on one of the shotgun pieces and there was eyewitness testimony of defendant shooting the victim, and video surveillance showed defendant walking to the area where the other items were discovered. Likewise, Fuller's testimony created a reasonable risk that only defendant's DNA would have been found on the other items, i.e., the magazine cap and shotgun shell.[4] As a result, additional DNA evidence incriminating defendant would have made it difficult for trial counsel to minimize the damaging effect of that evidence. On that basis, we conclude that defendant has not overcome the presumption that trial counsel made a strategic decision not to request DNA testing of all of the items collected by the police. We further note that, in light of the overwhelming evidence, defendant has failed to demonstrate any prejudice related to his ineffective-assistance-of-counsel claim.

Affirmed.

/s/ Karen M. Fort Hood
/s/ Michael F. Gadola
/s/ Anica Letica

---

claim, a defendant must raise the issue and admit that he acted intentionally, but that his actions were justified under the circumstances. *People v Guajardo*, 300 Mich App 26, 43; 832 NW2d 409 (2013). An individual may use deadly force against another individual anywhere he has the legal right to be with no duty to retreat if "[t]he individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or of another individual." MCL 780.972(1). However, "a defendant does not act in justifiable self-defense when he or she uses excessive force or when the defendant is the initial aggressor." *Guajardo*, 300 Mich App at 35. Defendant has not presented any evidence to suggest he was not the initial aggressor. In fact, the evidence at trial established that defendant shot the victim the moment the victim rang the doorbell, chased down the fleeing victim, and shot the victim again as he attempted to reach his vehicle.

[4] Fuller admitted to touching the shotgun itself approximately one month before the incident, but there was otherwise no indication that he would have touched any of the other items.